[No. 1367.]

THE STATE OF NEVADA ex rel. S. SUMMERFIELD, DISTRICT ATTORNEY, Respondent, *v.* WILLIS G. CLARKE, Appellant.

CONSTITUTIONAL LAW—NOTARY PUBLIC.—The office of notary public is a civil office of profit under this state, within the meaning of section 9 of article 4 of the constitution.

IDEM—RECEIVER IN UNITED STATES LAND OFFICE—Under that section the receiver of public money in a United States land office is ineligible to the office of notary.

IDEM—APPOINTIVE OFFICERS.—That section applies to appointive as well as to elective officers.

IDEM—OFFICERS EJUSDEM GENERIS—Section 32 of article 4 of the constitution, as it formerly stood, requiring the legislature to provide for the election of certain state and county officers, "and other necessary officers," referred by the words quoted to officers *ejusdem generis* with those enumerated, and not to other classes of officers.

(Syllabus by BIGELOW, J.)

APPEAL from the District Court of the State of . Nevada, Ormsby county.

*Richard Rising,* District Judge.

The facts are stated in the opinion.

*Robert M. Clarke,* for Appellant.

I.   Appellant is not an officer within the meaning of the constitutional provision.   The position of notary public is not a civil office.   The constitution was intended to prevent the holding of inconsistent offices, the duties of which are incompatible.   The duties of notary public and receiver of public money are not incompatible.

II.   The position of notary public is not within the letter of the constitutional inhibition.   It is not a civil office within the definition of that term, according to the courts or law dictionaries.   (Anderson's Law Dic. 728; 99 U. S. 24; 124 U. S. 313.) A civil office is one that involves the exercise of some public function or power of government.   (Anderson's Law Dic. 185; 99 U. S. 24.)

III.   The constitution includes only elective offices and has no application to an appointive office, such as notary public. This view is strengthened by the etymology of the word " eligible," which strictly defined means " fit to be chosen," " capable of being chosen."   (Webster's Dic. 385; 6 Am. & Eng. Ency. of Law, 447.)

IV.   If the position of notary public is a " civil office, under the government of this state," within the meaning of art. 4, sec. 9 of the constitution, it must be filled by election, and cannot be filled by appointment.   (Sec. 32, Art. IV. Const. of Nev., *State* v. *Arrington,* 18 Nev. 412.)

*Sardis Summerfield, in pro. per.,* for Respondent.

I.   Notaries public are amongst the most ancient of civil offi-

cers, and have always been recognized and regarded as such by the " Law Merchant " branch of the common law.

II.   Not only are notaries civil officers within the spirit and meaning of our constitution, but they are such by the express terms of our various statutes.   They are civil officers by appointment.   (Gen. Stats. 1636.)   They receive a commission from the secretary of state, file official bonds and take an official oath.   (Gen. Stats. 2236.)   They are required to keep public records.   (Gen. Stats. 2248.)

III.   The term " civil office of profit under this state " was intended to confine the class of offices, from which a party was to be excluded, to " offices of profit " as distinguished from offices of " honor " only, and to " civil " offices as distinguished from " military " offices.   The words " civil offices " as used in constitutions are meant to contradistinguish from the words " military offices. "   (Anderson's Law Dic. 185, Sec. 6.)

IV.   The argument of appellant that " the constitution includes only elective offices and has no application to appointive offices, is in direct contravention to the decision of this court, which has extended the meaning of the word " eligible " to " capable of legally holding."   (Nourse v. Clarke, 3 Nev. 570; Marshall v. Leonard, 73 Cal. 230.)

V.   The decision of this court in State v. Arrington, 18 Nev. 412, is not even suggestive in this case.   The office of notary public is not ejusdem generis to the offices named in article IV of the constitution and therefore cannot be held to be included in the phrase " and other necessary officers."   " Language, however general in its form, when used in connection with a particular subject matter, must be presumed to be used in subordination to that matter and limited accordingly."   (Edgcomb v. Creditors, 19 Nev. 152.)


By the Court, Bigelow, J.:

While the appellant was legally exercising the office of notary public in this state, he was appointed receiver of public money in the United States land office at Carson City.   The court below held that those two offices were incompatible, under the provisions of section 9 of article 4 of the constitution of Nevada, which reads as follows: "No person holding any lucrative office under the government of the United States or any other

power, shall be eligible to any civil office of profit under this state; *provided,* that postmasters whose compensation does not exceed five hundred dollars per annum, or commissioners of deeds, shall not be deemed as holding a lucrative office."

The appellant, however, contends that the office of notary is not a "civil office of profit under this state," within the meaning of this section, and this is the only question presented in the case. The words office and civil office have several meanings. The sense in which they are used in any particular place can usually be determined by a reference to the context and the subject matter of the instrument. Sometimes they would include the president and trustees of a corporation, executors, deputies, etc., but no such meaning can be attached to them here. They only refer to such officers as are connected with the civil administration of the government, and were doubtless intended to include all such, to the exclusion of military officers. In construing the words civil officers, as used in the constitution of the United States, Judge Story says: "The sense in which the term is used in the constitution seems to be in contradistinction to military." (1 Story, Const. Sec. 791.) Again, in the next section, he says: "All officers of the United States, therefore, who hold their appointments under the national government, whether their duties are executive or judicial, in the highest or in the lowest departments of the government, with the exception of officers in the army or navy, are properly civil officers, within the meaning of the constitution."

It has been frequently held that a notary is a public officer. (*Kirksey* v. *Bates,* 7 Port. (Ala.) 529; *Governor* v. *Gordon,* 15 Ala. 72; *Smith* v. *Meador,* 74 Ga. 416; *Keeney* v. *Leas,* 14 Iowa 464.) He is also recognized and called an officer in our statutes, is to be appointed for a definite term, is required to take the official oath, to give a bond the same as other officers, to keep a record of his official acts, and for his services may charge certain fees, which are regulated by law. Clearly he is an officer.

Then is he a civil officer? As there are but two principal divisions of officers—civil and military—known to our system of state government, it must be that all that do not come within one class are included in the other. As a notary is not a military officer, he must be a civil one. By statute, he occupies a position in the civil administration of the government,

and one that is quite important. He is charged with duties to the public at large that constitute him a public or state officer. *(State* v. *Kirk,* 44 Ind. 401; *Howard* v. *Shoemaker,* 35 Ind. 111.) The opinion of the judges *in re House Bill* No. 166, 9 Colo. 628, is, upon this point, on all fours with the case in hand. It was there held that the office of notary was a civil office within the meaning of that term as used in the constitution, and that consequently a bill authorizing the appointment of one to that position who was not a qualified elector was unconstitutional. (See also, Mechem, Pub. Off. Sec. 1, *et seq.;* Id. Sec. 24; *Shelby* v. *Alcorn,* 36 Miss. 273.) In fact, we do not understand it to be particularly contended that a notary is not a public officer, nor even that he is not a civil officer, but rather, notwithstanding he may be such, that it was not the intention of the makers of the constitution to include that office in the prohibition contained in this section.

This position is based, first, upon the proposition that the office of notary does not come within the mischief intended to be guarded against, and consequently should not be held to be within its terms. In construing a constitution, the same as any other instrument, we are not always to be guided by the letter of the act. We are to seek for the meaning that the words were intended to convey, and endeavor to carry out the intention of those adopting it. But a fundamental principle in all construction is that where the language used is plain and free from ambiguity, that must be our guide. We are not permitted to construe that which requires no construction. It is possible that when the convention adopted this section they did not have the office of notary in mind, and that if they had, it would have been excluded; but on the other hand, it is also possible that it would not have been excluded, for there is really as much reason for including this office as that of many other minor positions, which are admittedly covered by the section. At any rate, it was within the power of the constitution-makers, whether sufficient reason did or did not exist for their doing so, to include this office; the language they have used clearly does include it, and, under the circumstances, that is the end of the controversy. We are not permitted to speculate further as to what their real intentions were. (Cooley Const. Lim. 69; End. Interp. Stat. Sec. 6; *Sturges* v. *Crowninshield,* 4 Wheat. 204; *Gibbons* v. *Ogden,* 9 Wheat. 217.)

It is also contended that the word eligible only refers to elective officers, and consequently does not include those who hold by appointment; but we are of the opinion that it was intended, as used here, to include both. It has been several times decided that the word includes capacity to hold, as well as to be elected to an office, and if such is the case no distinction can be drawn between elective and appointive officers. If the incumbent is ineligible to hold an office, it can make no difference whether he obtained it in the first instance by election or appointment. If the constitution read that certain persons shall not hold any civil office of profit, instead of shall not be eligible to such office, it would be clear that this point was untenable, and as it appears that that is what it really means, the same result follows. (*State* v. *Clarke*, 3 Nev. 566, 570; *State* v. *Murray*, 28 Wis. 96, 99; *Carson* v. *McPhetridge*, 15 Ind. 327, 331; *People* v. *Leonard*, 73 Cal. 230, 233.)

As a further reason for the belief that notaries public were not intended to be included in this section of the constitution, it is urged that if so, they must under section 32 of article 4 of the constitution, which requires the legislature to provide for the election of certain state and county officers "and other necessary officers," be elected, instead of being appointed; and the case of *State* v. *Arrington*, 18 Nev. 412, is referred to as sustaining this position. This result might be conceded without militating particularly against the view we have taken, but we do not think it follows that such must be the case. By the amendment of 1889, section 32 was changed so that the words "other necessary officers," no longer appear; but even as it originally stood, they apply only to officers similar to those previously enumerated in the section, and not to legislative officers, officers of the militia, and other officers belonging to different classes from those mentioned. (End. Interp. Stat. Sec. 405, 409; *Edgecomb* v. *His Creditors*, 19 Nev. 149, 152.)

No error appearing in the judgment, it must be affirmed, and it is so ordered.