## GOOCH *v.* EXETER.

A statute creating a board of police commissioners for a town, to be appointed by the governor, and authorizing them to appoint, remove, and equip police officers and fix their pay, is not unconstitutional on the grounds that it takes from the town control of local affairs to which it is entitled, that it subjects the inhabitants thereof to taxation without representation, and that the taxation so imposed is unequal and unreasonable ; and a police officer employed by such board may recover for his services in an action against the town.

ASSUMPSIT, for services as police officer. Facts agreed. The plaintiff was a police officer of Exeter by appointment of the board of police commissioners for the town, under chapter 188, Laws 1895 ; and there is a balance due him for services at the rate of pay fixed by the board.

*Arthur O. Fuller,* for the plaintiff.

*Eastman & Hollis* and *Frink & Marvin,* for the defendants.

CHASE, J.   The statute creates a board of police commissioners for the town of Exeter consisting of three members, appointed by the governor, with the advice and consent of the council.   The board is empowered to appoint, remove, and equip the police officers of the town and fix their pay, and to make and enforce reasonable rules for their government.   The police force is to consist of regular officers, not exceeding five, and of special officers as occasion requires.   They hold office during the pleasure of the board, possess the powers of police officers and constables, and are to be paid by the town.   Laws 1895, *c.* 188.

The defendants challenge the constitutionality of the statute on these grounds : that it takes from the town control of local affairs to which the town is entitled, that it subjects the inhabitants of the town to taxation without representation, and that the taxation so imposed is unequal and unreasonable.

The constitution confers upon the general court power "to make, ordain, and establish all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions, either with penalties or without, so as the same be not repugnant or contrary to this constitution, as they may judge for the benefit and welfare of this state and for the governing and ordering

thereof and of the subjects of the same, for the necessary support and defence of the government thereof; and to name and settle, . . . or provide by fixed laws for the naming and settling, all civil officers within this state, such officers excepted the election and appointment of whom are hereafter in this form of government otherwise provided for; and to set forth the several duties, powers, and limits of the several civil and military officers of this state; . . . and to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of, and residents within, the said state, and upon all estates within the same." Const., *pt.* 2, *art.* 5. These terms are sufficiently comprehensive to include power to enact a statute like the one under consideration. Police officers are civil officers. · Their principal duty is to assist in the preservation of the public peace,— a matter of public concern. They are state or public officers,— not town or private officers. 1 Dill. Mun. Cor., *ss.* 58, 60, 210. The election or appointment of such officers is not provided for in the constitution otherwise than by the grant to the general court of power to " name and settle, . . . or provide by fixed laws for the naming and settling," of all civil officers within the state. The legislature may delegate to towns or town officers authority to select police officers for their respective localities, or place upon them the duty of doing so. *State* v. *Noyes*, 30 N. H. 279. Although the power of delegation is not expressly granted by the constitution, it "is implied from the principle of local self-government." *Gould* v. *Raymond*, 59 N. H. 260, 276; *State* v. *Hayes*, 61 N. H. 264. The legislature may withdraw, at will, authority thus delegated or imposed, and exercise it directly or through other agencies. *State* v. *Griffin*, 69 N. H. 1, 30, and authorities cited. While a town possesses the authority, its right to the authority is the right of an agent, not that of an owner. As parts of the governmental machinery (62 N. H. 208, 209), towns may be entrusted with the authority or required to exercise it, but they cannot demand it.

The legislature has made provision for having police officers or constables in all towns. Authority is given to towns and cities generally to elect or, through their officers, to appoint such officers and to regulate local police affairs. P. S., *c.* 43, *s.* 25; *Ib.,* *c.* 48, *s.* 15; *Ib., c.* 249. Early in the history of the state the legislature began to exercise its power over such matters directly in reference to particular places. In 1807, an act was passed for regulating the police in the town of Portsmouth. Laws, *ed.* 1811, *p.* 74. The act of June 28, 1823, required the selectmen of Portsmouth to appoint annually not exceeding seven police officers and prescribed certain police offences for the town. It went into effect in Portsmouth without action by the town, and other towns

were authorized to adopt any of its provisions. Laws, *ed.* 1824, *p.* 80. It affords a good illustration of the exercise of legislative power, both directly and indirectly. Recently, acts have been passed establishing boards of police commissioners for particular cities and towns, and giving the boards control over local police matters. Laws 1893, *cc.* 182, 202 ; Laws 1895, *cc.* 162, 188, 205. These special statutes seem to create an inequality in the rights and privileges enjoyed by towns and cities ; but when it is considered that the corporations have no inherent rights in the matter of electing or appointing police officers and prescribing police regulations, the seeming inequality fades away. It was said by *Carpenter*, C. J., in *State* v. *Griffin*, 69 N. H. 1, 30: " The equality of the constitution is the equality of persons and not of places — the equality of right and not of enjoyment. A law that confers equal rights on all citizens of the state, or subjects them to equal burdens, and inflicts equal penalties on every person who violates it, is an equal law, though no one can enjoy the right, be subjected to the burden, or infringe its provisions, without going to or being in a particular part of the state. It does not discriminate in favor of some at the expense of others." The circumstances pertaining to a town,— its size, the character of its inhabitants, the public sentiment prevailing among them, the nature and extent of the business carried on in the town, its educational and other institutions, its situation with reference to other communities,— these or other circumstances may make it advisable that the agencies for preserving the public peace in it should differ from those employed generally. Whether legislation of this character in a particular case " be wise, reasonable, or expedient, is a legislative and not a judicial question." *State* v. *Marshall*, 64 N. H. 549, 550 ; *State* v. *Griffin*, 69 N. H. 1, 31.

Dillon says: " It has been several times determined that the legislature may, unless specially restricted in the constitution, take from a municipal corporation its charter powers respecting the police and their appointment, and by statute itself directly provide for a permanent police for the corporation, under the control of a board of police not appointed or elected by the corporate authorities, but consisting of commissioners named and appointed by the legislature." 1 Dill. Mun. Cor., *s.* 60. See, also, Cool. Con. Lim. (6th ed.) 203, 227-230, 281, 282 ; *People* v. *Common Council*, 28 Mich. 228, 235, 236 ; *Baltimore* v. *State*, 15 Md. 376 ; *State* v. *Covington*, 29 Ohio St. 102 ; *Commissioners* v. *Louisville*, 3 Bush 597 ; *State* v. *St. Louis*, 34 Mo. 546 ; *State* v. *Hunter*, 38 Kan. 578, 582, 583 ; *State* v. *Seavey*, 22 Neb. 454. A statute of Massachusetts creating a board of police commissioners for the city of Boston, in all essential particulars like the statute under consideration, was

held to be constitutional under a provision almost literally the same as that of the constitution of this state. *Commonwealth* v. *Plaisted*, 148 Mass. 375.

The objection that the statute subjects the inhabitants of the town to taxation without representation is not tenable. Presumably, Exeter was represented in the general court which enacted the statute. See *People* v. *Mahaney*, 13 Mich. 481, 500. Nor is the town subjected by the statute to unequal or unreasonable taxation within the meaning of the constitution. In common with all other towns of the state, it is required to bear its proportional share of the burden of preserving the public peace. It cannot decline to perform the duty nor refuse to raise the necessary taxes for the purpose. Cool. Con. Lim. 282. This burden is not distributed by apportioning to towns taxes to provide money with which to meet the expense, but by requiring towns to support the local officers reasonably necessary for preserving the peace within the town limits. This statute requires Exeter to pay the police officers necessary for the town, and other statutes, general and special, require the other towns of the state to pay the corresponding officers in their towns respectively.

The duty in this matter closely resembles that in regard to highways. Cool. Tax. 476, 477, 478. Towns are bound to build and maintain, wholly or partially, the highways within their borders, although laid out without their consent or even against their strenuous opposition. If the selectmen laid out any of the highways, they acted not as town agents but as public officers. The only voice towns had in deciding whether they would assume the burden was in the legislature, through their representatives, when the statutes which imposed it were under consideration. The money raised by towns for the repair of highways is largely expended by public officers over whose action towns have no control. Laws 1893, c. 29; Laws 1899, c. 29; *Ball* v. *Winchester*, 32 N. H. 435, 440; *Hardy* v. *Keene*, 52 N. H. 370; *Gross* v. *Portsmouth*, 68 N. H. 266, 267. It is said in a recent case in Massachusetts, where, as previously remarked, the constitutional provision is similar to that of this state: "No doubt the legislature might provide for the appointment of public road-masters entirely independently of the towns, and still require the towns to pay the expenses of keeping the roads in repair." *Kingman & a., Petitioners*, 153 Mass. 566, 575. The burdens thus placed upon towns are not exactly equal. Some towns have relatively a longer line of highways in the aggregate, or highways that are more expensive to maintain, than other towns. But this method of apportioning the public duty of maintaining highways has been practiced from the early history of the state, and does substantial justice. And so towns are bound

to pay local police officers, although they have no direct voice in the appointment of the officers, and although the public burden is not thereby distributed in mathematical proportion.

If the plaintiff had been elected by the town or appointed by its selectmen under legislative authority, probably no question would be made regarding the obligation of the town to pay for his services. The transaction then would have the appearance of an employment of the plaintiff by the town; it would have the semblance of a contract. Yet when it is considered that the seeming employment is not such in fact, but is the designation of a person to perform the duties of a public office, and that it is made by the town not on its own account but as an agent of the state, the immaterialty of the town's act upon the question of its obligation to pay for the officer's services becomes apparent. The obligation does not arise from a contract, but, like the obligation to build and repair highways, is imposed by the general court. 1 Dill. Mun. Cor., ss. 73, 74.

The pay of an officer is an incident of his office. Obviously, power "to name and settle" an officer and set forth his duties includes power to fix his compensation. The general court may fix the compensation directly, or delegate authority to fix it, to a governmental agency. The salaries of county solicitors, sheriffs, and county treasurers are instances in which the compensation of public officers has been established directly by the legislature, although paid from the county treasuries. P. S., c. 286, ss. 17, 18, 19, 20. The county conventions have no voice whatever in the matter. The salaries of the judges of police courts in cities are generally fixed by the same authority, although payable from the city treasuries. The act establishing the board of police commissioners of Portsmouth provides that the compensation of the marshal shall be $1,000 a year, and of the other police officers $2.50 a day, to be paid by the city. Laws 1895, c. 162, s. 4. The acts relating to Concord, Manchester, and Laconia, respectively, delegate to the city councils of the city authority to fix the pay of officers appointed under them, and provide that the amounts so expended shall not exceed the amounts appropriated for the purpose. Laws 1893, c. 182, s. 8; Ib., c. 202, s. 5; Laws 1895, c. 205, s. 8. The act under consideration delegates the authority to the board of commissioners. Laws 1895, c. 188, s. 5. There appears to be nothing in this fact that renders the act unconstitutional.

*Case discharged.*

YOUNG, J., did not sit: the others concurred.