Hillsborough, }
June 7, 1904. }

### WIGGIN *v.* MANCHESTER.

It is within the power of the legislature to transfer to police commissioners appointed by the governor and council the care and control of a building provided by the municipality for police purposes.

The police commissioners of the city of Manchester had authority to appoint a janitor for the police station immediately upon the passage of chapter 324, Laws 1903; and the right of their appointee to recover of the city compensation for services rendered at their request is not affected by the fact that another person was at the same time engaged in the performance of the same duties, by virtue of a contract of employment with the municipal authorities.

ASSUMPSIT, for services. Facts agreed. Transferred from the January term, 1904, of the superior court by *Wallace*, C. J.

At a meeting of the lands and buildings committee of the board of mayor and aldermen of Manchester, held March 21, 1903, Charles W. Skinner was employed as janitor of the police station for one year from the first day of the following April. In making the contract of employment, the committee acted under the provisions of section 2, chapter 34, Laws and Ordinances of the City of Manchester, which is as follows: "The joint standing committee on lands and buildings shall have the care of all other buildings belonging to the city. They shall employ a janitor to take charge of the court house. . . . The said committee may also employ such persons as may be necessary to take charge and care of the other buildings of the city." Skinner entered upon the discharge of his duties on April 1, 1903.

April 6, 1903, the police commissioners of Manchester, acting under chapter 324, Laws 1903, appointed the plaintiff as janitor of the police station, and he entered upon the discharge of his duties on the same date. He has never been notified by the lands and buildings committee or by the police commissioners to leave the employ of the city, but the municipality, through its proper officers, has refused to pay him for his services or to recognize his claim to the position. He still continues to perform the duties of janitor at the police station, with the knowledge and approval of the police commissioners.

There was no necessity for the services of an additional janitor when the plaintiff was appointed, and there is none now. There was no cause for discharging Skinner, and no reason for terminating contractual relations with him, except as shown by the facts herein stated. He has not been discharged by the board of mayor and aldermen or by the lands and buildings committee, and still continues to act as janitor. The city has accepted his services and recognized him as janitor. He has not been so recognized by the police commissioners, his bill for services has not been approved by them, and he was notified by them that his services were no longer necessary at the time of the plaintiff's appointment. There was no vacancy in the position of janitor when the plaintiff was appointed, unless the facts herein stated show a vacancy.

If upon the foregoing facts the plaintiff is entitled to recover, he is to have judgment for $454 in full for all services to November 19, 1903.

*Taggart, Tuttle, Burroughs & Wyman,* for the plaintiff.

*George A. Wagner* (with whom was *Oliver E. Branch*), for the defendants.

PARSONS, C. J. The question whether the legislature have power to establish, by appointment of the state executive, boards of police commissioners who should have control over local police matters, including the appointment of police officers and the determination of the amount of their compensation, was determined affirmatively in *Gooch* v. *Exeter*, 70 N. H. 413. The decision was upon the ground that the "principal duty" of the police "is to assist in the preservation of the public peace—a matter of public concern," and that "they are state or public officers—not town or private officers." *Ib.* 414; *Burch* v. *Hardwicke*, 30 Grat. 24,—32 Am. Rep. 640; *Newport* v. *Horton*, 22 R. I. 196. The transfer to such commissioners, for the use of the police under their control, of station houses and other machinery provided by the ·municipality for police purposes is valid, since the property is still applied to the use for which it was dedicated, and the only change is in the agency by which the use is directed. Dill. Mun. Corp. (4th ed.), s. 60; *Baltimore* v. *State*, 15 Md. 376,—74 Am. Dec. 572, 585, 586. The legislature, therefore, have power to give such police commissioners control over a station house,—a building the use of which is essential to the conduct of the police of the city,—by giving to them the control of the care of the building. Authority to make such change is necessarily included in the power to transfer the police from municipal to state control. In 1893, the powers possessed ·by the municipal officers of Manchester "in relation to the appointment and removal, the uniforming and organizing, of police officers of the city" were transferred to and vested in a board of police commissioners appointed by the governor and council. Laws 1893, c. 202, ss. 1, 3.

Whether by necessary intendment it must be understood that the commissioners were given by this act such control over the station houses and other buildings or apparatus dedicated to the use of the police force that none of the municipal officers could interfere in their use and control of them, need not be considered; for the legislative purpose has been expressly stated. Having the power to make such change, whether such change was intended is to be inferred from the language used, which is as follows: "An act in relation to the powers and duties of police commissioners of Manchester. . . . Section 1. It shall be the duty of the police commissioners of the city of Manchester to appoint a janitor for the care of the police station ·and fix his compensation therefor. Sect. 2. All acts and parts of acts inconsistent with this act are hereby repealed, and this act shall take effect upon its passage." Laws 1903, c. 324. This act was approved April 2, 1903. Acting under the authority supposed to be conferred thereby, the police commissioners, on April 6, 1903, appointed the plaintiff

janitor of the police station, and he entered upon the discharge of his duties on that date and has continued " to perform the duties of janitor at the police station, with the knowledge and approval of the police commissioners." In other words, as the employee or appointee of the police commissioners, the plaintiff has performed all the services required of him to their satisfaction ; and the sole question in this case is whether he is entitled to be paid the compensation fixed by the commissioners for the services which he has rendered at their request. There is no controversy as to the amount which the plaintiff is entitled to recover, if he can recover at all. There is no contention, therefore, that the commissioners have awarded anything but reasonable compensation for the service performed. Under these circumstances, as it has been decided the legislature had power to confer the authority to appoint upon the commissioners, why should not the plaintiff have his pay? It is not claimed that there is anything in the language by which the legislature expressed their purpose from which any inference against the plaintiff's right can be drawn.

It is said that certain facts appear by parol from which the court must attach a condition to the exercise of the power, which is not contained in the written expression of legislative purpose. These facts are as follows: Prior to the passage of the act, one Skinner had been employed by the municipal authorities of the city as janitor of the police station for one year. It is found, or agreed, that there was no necessity for the appointment of an additional janitor when the plaintiff was appointed, and that when he was appointed there was no vacancy in the position of janitor, unless the facts stated show a vacancy.

It is urged that Skinner held a contractual relation as employee with the city government, the obligations of which the legislature could not impair, and that, as an additional janitor was unnecessary, the power conferred upon the commissioners must have been conferred upon the condition that it should not be exercised until Skinner's contract of employment expired. The facts relied upon stand as the conclusions of the trial court. It does not appear that the legislature knew of Skinner's contract, or held the opinion that only one janitor was necessary. The facts surrounding the parties at the time, and in contemplation of which the language was used, may be referred to, to ascertain what the language meant to the parties ; but it is an elementary proposition that a written instrument cannot be modified or controlled by parol evidence. If the legislature did not pass the act understanding that Skinner held a valid contract for a year, there is no force to the argument. Whether they did so understand or not, there is no evidence except the act itself. The failure to make any reference to Skin-

ner's contract, or to insert the condition which it is now proposed to read into the act, tends to establish that the legislature did not understand such to be the character of Skinner's contract, rather than that they meant the act to be read with the provision suggested. The argument is merely a contention as to what the legislature would probably have done if they had understood the facts as now found. That they did not so provide establishes that they did not so understand, rather than that they did what they did not do. Whether the legislature were right or wrong in their probable conclusion (if they knew anything of the fact) that Skinner's contract was invalid, has not yet been decided. If wrong, so much of the legislative purpose as tended to impair the obligation of his contract must fail of execution. But the question of Skinner's rights cannot affect the plaintiff's right to recover, because so much of the act as authorized the commissioners to employ a janitor is within the legislative power. The main purpose of the act was to place the janitorship under the control of the police commissioners. There is no reason why this purpose should be defeated by want of power to abrogate Skinner's contract without payment of damages. But regardless of any technical defect in the authority appointing or employing either Skinner or Wiggin, the city is now bound to pay for services received and accepted by them. *Skinner* v. *Manchester*, *ante*, *p*. 299; *Cousins* v. *Manchester*, 67 N. H. 229.

In the case of *Skinner* v. *Manchester*, *ante*, *p*. 299, it was not suggested that either the committee or the commissioners had attempted to discharge Skinner, and he was considered entitled to recover for services accepted by the city. It now appears that the commissioners when they appointed Wiggin notified Skinner that his services were no longer necessary, and that they did not accept his services as janitor after the appointment of Wiggin, but recognized Wiggin as janitor and accepted his services as such, while the municipal officers took the contrary course. The question therefore is: What officers had power to accept the services tendered by both Skinner and Wiggin,—the commissioners, or the municipal officers of the city? The language of the provision under which the commissioners acted is plain and unambiguous, and calls for neither explanation nor interpretation. Wherever the authority to appoint or employ some person as "janitor for the care of the police station" had previously vested, the act plainly and unequivocally vested that authority in the police commissioners immediately upon its passage. After this legislation, the committee on lands and buildings, or other municipal officers, had no power to represent the city as to the janitorship of the police station; that power was vested exclusively in the police commission-

ers. Hence it follows upon the facts now stated, but which were omitted when Skinner's case was before the court, that Wiggin's services were accepted and Skinner's were not, and that Wiggin is entitled to recover. Despite the agreement in this case, that there was no cause for discharging Skinner, the commissioners may have entertained a different opinion as to the fact, or they may have thought his contract for a year invalid or terminated by the transfer of the controlling agency to them. If they were in error in each respect, and if such error would have given Skinner a ground of action for breach of contract, the city could not set up a breach of contract with Skinner to escape their obligation to pay for services accepted by the duly authorized agency. The plaintiff's right to recover for services rendered stands precisely as it would if, in the absence of any legislation, the municipal officers, having employed Skinner for a year, had then discharged him, employed the plaintiff, and accepted his services. It would not be urged that the defendants' admission, or a judicial finding, that Skinner's discharge was wrongful, was an answer to the plaintiff's claim for payment for service performed. Skinner was not a public officer. He was an employee, and his position under his contract was an employment and not an office. *Whitehouse* v. *Langdon*, 10 N. H. 331; *Ricker's Petition*, 66 N. H. 207, 230, 231. His contract did not give him an estate for years in the station house, or any right of entry beyond a revocable license. At the best, his position was that of a servant employed by the year, who, if wrongfully discharged, has a right of action for breach of contract, but who cannot by force of his contract compel his master to keep him in his service. The contract was not one of the comparatively few which the law will enforce by decreeing specific performance, but the ordinary contract which the law leaves the promisor free to break if he chooses, giving the other party the remedy of damages for the breach. Holmes Com. Law 301; *Chellis* v. *Grimes, ante, pp.* 104, 106.

If it is fairly inferable from competent evidence that the legislature did not intend there should be more than one janitor, or that the commissioners should appoint a janitor unless there should be occasion therefor, still, as the appointment of a janitor was exclusively placed with the commissioners, their determination that an occasion existed which required one to be appointed must be conclusive so far as the present suit is concerned. But it is said that if the commissioners had no power to appoint a janitor until Skinner's contract was in some manner terminated, they had no power to bind the city by the acceptance of the services of any one. The legislature had power to deprive the municipal officers of control over the building, and this they did by repealing all statutes

authorizing them to exercise such control. It is not probable that it was intended to render Skinner accountable to no one during the year of his contract. As by the same act the control was vested in the commissioners, it is probable such power was intended to vest in them when taken from the officers formerly possessing it, which was upon the passage of the act. Neither is it probable the legislature contemplated the conflict which has in fact taken place and expected two persons should be employed during the year, each claiming to be janitor. It seems more probable they intended to place the determination who should be janitor with the commissioners, than that their purpose was to leave the question open for a year for the slow action of the court.

The case contains facts bearing upon the validity of Skinner's contract. If the committee who employed Skinner had not authority to employ him for a year, or to make any contract which would hamper or delay the commissioners in the performance of the duties which the legislature could rightfully impose upon them, no question as to the right of the plaintiff to recover could be raised. Whether Skinner's contract is valid, and whether he has any right of action for the refusal of the commissioners to recognize him as janitor, may be questions of no practical importance to the parties. If they are, it is not advisable to consider them unnecessarily in a suit to which Skinner is not a party. Upon other grounds than the invalidity of Skinner's contract, the plaintiff is entitled to judgment.

*Judgment for the plaintiff.*

WALKER, BINGHAM, and YOUNG, JJ., concurred.

CHASE, J., *dissenting.* Skinner was not a public officer, but a mere servant of the city, employed " to take charge and care " of the police station. Apparently, the contract with him was valid. Since 1897, the board of mayor and aldermen of Manchester have had the care and superintendence of the city's buildings and property. Laws 1846, *c.* 384, *s.* 18; P. S., *c.* 50, *s.* 5; Laws 1897, *c.* 198, *s.* 1. By section 2, chapter 34, of the ordinances of the city, the committee on lands and buildings is empowered to employ such persons as may be necessary to take charge of the city's buildings. This committee of the board of mayor and aldermen made the contract with Skinner. No reason has been pointed out, and none is perceived, why the city was not bound by the contract. No question in respect to it is raised under the statute of frauds. The only question before the court is, whether the legislature intended by the act of 1903 to annul this contract, or merely to

transfer to the police commissioners authority to select janitors for the police station after the contract was ended. The act reads as follows: " It shall be the duty of the police commissioners of the city of Manchester to appoint a janitor for the care of the police station, and fix his compensation therefor. All acts and parts of acts inconsistent with this act are hereby repealed, and this act shall take effect upon its passage." Laws 1903, *c.* 324. It is improbable that the legislature intended to provide for the appointment of a janitor in addition to the one already employed, as there was no necessity for such appointment. Moreover, the employment of two persons, one by each of two agencies acting independently of each other, to have the control and care of a building, both charged with the same duties, would be likely to lead to confusion and conflict and result in ineffective and unsatisfactory service. It is also highly improbable that the legislature attempted to annul or impair the contract made by the city with Skinner. They did not have the power to do this. U. S. Const., *art.* 1, *s.* 10. The presumption is that they did not attempt to do it. The only purpose of the act seems to have been to transfer from the city to the police commissioners the function of selecting and employing a janitor for the police station. Undoubtedly, the legislature possessed the power to make such transfer. *Gooch* v. *Exeter*, 70 N. H. 413. But there is no reason to suppose that they intended to interfere in any way with the existing contract relating to the subject. On the other hand, there are cogent reasons for believing that the transfer was intended to be subject to the incumbrance of such contract.

No doubt, the city had the privilege of breaking its contract with Skinner, and might do so without justifiable cause. By an exercise of the privilege, it would render itself liable to pay the damages resulting therefrom. If compelled to pay damages, it would merely suffer the natural consequences of its voluntary act. Whether the legislature can exercise the privilege, directly or indirectly, and leave the damages for the city to settle, is quite a different question. They certainly cannot do so without subjecting the city to an exceptional and unreasonable liability, and one that is unequal when compared with the liabilities imposed upon towns generally. If they may do it in this case, they may do it in respect to any contract entered into by a municipal corporation in the performance of its duties to the public. For instance, if a town contracts with a person to build a new highway laid out within its limits, the legislature may step in and wrest the contract from the contractor, and subject the town to liability to pay his damages, by enacting a statute making it the duty of the highway engineers of the state (Laws 1903, *c.* 133) to build the highway. Such legis-

lation, besides doing great injustice to towns, would set an example of bad faith in the execution of contracts that could not be followed without sacrificing moral principles. If the constitution allows legislation of this kind, it would require definite and unmistakable language in a given case to satisfy the court that the legislature intended to exercise the power. The language of the present act is not sufficiently explicit and definite to warrant the inference of such intention. It makes no reference to existing contracts. It speaks prospectively. "It shall be the duty of the police commissioners . . . to appoint a janitor." When? Not necessarily immediately upon the passage of the act, when there is one already provided, but thereafter, whenever one shall be needed. The express repeal of existing acts does not tend to prove an intent to interfere with contracts entered into under the acts repealed. The presumption is that the intent was consistent with the prohibition of the constitution against the passage of any law impairing the obligation of contracts. *Leavitt* v. *Lovering*, 64 N. H. 607. If the repeal was intended to render the contract void, it would not have that effect. P. S., c. 2, s. 35; *Hall* v. *Hall*, 64 N. H. 295. In case Skinner should become incapable of performing the service, or should fail to do so, or any circumstance should occur which would justify a revocation of the contract, the power to make the revocation undoubtedly belongs to the police commissioners. Power to select an employee inferentially includes power to remove for cause one already employed. But, as has been shown, the privilege which the city had of 'breaking the contract without justifiable cause,—from mere caprice,—was not transferred to the commissioners.

According to the record, there was no cause for discharging Skinner, and no cause is stated for terminating the contract with him. Under the circumstances, the commissioners had no authority to terminate the contract, and their notice to him that his services were no longer necessary had no effect. Skinner's contract being in force, the commissioners had no authority to appoint Wiggin, either in his place or as an additional janitor, and as a consequence no authority to accept Wiggin's services on behalf of the city. The city, by its proper officers, refused to recognize him as janitor—refused to accept his services. It never promised, expressly or inferentially, to pay him for his services, and therefore is not liable in this action.