THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* MARTI, DEFENDANT AND APPELLANT.

Appeal from the District Court of Mayagüez in an action for perjury.

No. 616.—Decided February 19, 1914.

CONTINUANCE—EXCEPTIONS.—In order that this court may consider the ruling of a trial court denying a continuance asked for by the accused, it is necessary that the ruling had been excepted to in the lower court.

EVIDENCE—SIGNATURES—EXPERT TESTIMONY.—In accordance with the provisions
of sections 87 and 90 of the Law of Evidence of March 9, 1905, in order to
prove the genuineness of the signatures to a document it is not necessary
that the witnesses should be experts in the sense that they must have special
knowledge, for said sections allow the signature to a document to be proved
by any person who, although he may not have seen the signature made or be
a witness to the document, believes the same to be authentic because he
has seen the same signature on other documents.

EVIDENCE.—The admission in evidence by a court of documents bearing a signa-
ture which had been proven to be authentic by the testimony of persons
who were familiar with 'said signature, the court thus deciding the con-
troversy between the parties regarding the admissibility of said documents,
is only a ruling that there is some evidence of the genuinesess of the docu-
ments which should be submitted to the jury in order that it may pass upon
the credibility and weight of said testimony and decide whether it is sufficient
to prove that the documents were signed by the person who appears to have
executed them.

POLICE—CIVIL OFFICERS.—The police and officials entrusted with the preservation
of the public peace are civil officers and the Insular police corps is a civil
body.

The facts are stated in the opinion.

Mr. *Charles E. Foote,* fiscal, for The People.

Messrs. *Rafael López Landrón, Esteban Ramírez Nadal*
and *Pascasio Fajardo* for appellant.

MR. JUSTICE ALDREY delivered the opinion of the court.

The appellant, José Martí Font, was accused before the
District Court of Mayagüez of the crime of perjury. He
was charged with having stated in an application sworn to
before the Justice of the Peace of Lajas, which application
he sent to the Chief of Insular Police with the object of
enlisting in that body, that he had not been expelled from
any civil or military body; that he had been a member of
the Insular police force but had left it of his own accord,
and this being a necessary condition for his re-enlistment,
he made the statement falsely, for he knew that he had been
dismissed from the Insular police force in the year 1908 for
improper and immoral conduct, as is shown by general order
No. 152, which had been communicated to the accused.

The trial having been had before a jury and the accused
having been found guilty of the said offense, the District
Court of Mayagüez sentenced him to a term of imprisonment

in the penitentiary, from which judgment he took the present appeal.

The grounds on which the appellant asks for a reversal of the judgment are three: 1. That the Judge of the District Court of Mayagüez committed certain errors which are specified in the brief; 2, that he acted with marked partiality, prejudice and passion against the appellant; and 3, that the verdict of the jury is contrary to the evidence introduced.

Let us first consider the second error alleged because it refers to proceedings prior to the trial.

It appears from the statement of facts that November 20, 1912, having been set for the trial, the *fiscal,* on the 15th of the said month, moved for a continuance which was granted by the lower court on the condition that the oral motion should be put in writing and be duly sworn to, which was never done; that on January 21, 1913, the trial was had and the jury failed to agree and a new trial was set for March 28 following, on which day the accused was committed to prison because the court decided after an investigation that there were no grounds for the continuance which the accused asked for in a motion accompanied by a medical certificate addressed to the secretary of the court. These are the facts on which the appellant bases the second ground of his appeal. In his brief he contends that when the court granted the motion of the *fiscal* for a continuance the accused was prejudiced in his rights by losing his chance to obtain a more favorable final result than the verdict of conviction subsequently rendered by the jury; that the overruling by the court after an investigation of the appellant's motion, which investigation is not included in the record, and his commitment to prison on the same day of the trial, although for a short time, deprived him of an opportunity to prepare all the details of his defense, and he contends that such conduct on the part of the judge showed partiality and prejudice against the appellant.

Neither of these two rulings was excepted to by the appel-

lant and this he should have done if he wishes us to consider his objections now, for we must interpret his silence to mean that he consented thereto; but in any event we cannot agree with the appellant that these facts alone show prejudice or partiality because at most they would show an undue exercise of the discretional power which lies in the court to grant or refuse a continuance.

The error referred to in the brief as a first ground for a reversal of the judgment consists in the court's having admitted certain documents and given them to the jury for its consideration, the theory of the appellant being, so far as we can see, that as they were documents the signatures to which had to be authenticated, this could not be done except by persons who had been qualified previously as experts, and in that connection he contends that sections 87, 90 and 91 of the Law of Evidence have been violated because the persons who testified as to the genuineness of the signatures did not witness the writing of the same, were not qualified to act as experts and did not subscribe the documents as witnesses.

As the record does not show that any attempt was made to prove the genuineness of the signatures by means of a comparison by the witnesses or the jury with other documents admitted to be authentic, section 91, which is the last claimed to have been violated, has no bearing on this case.

The other sections read as follows:

"Section 87.—Any writing may be proved either:

"1. By anyone who saw the writing executed; or,

"2. By evidence of the genuineness of the handwriting of the maker; or,

"3. By a subscribing witness.

    *         \*         \*         \*         \*         \*         \*

"Section 90.—The handwriting of a person may be proved by anyone who believes it to be his, and who has seen him write, or has seen writing purporting to be his, and upon which the supposed writer has acted or been charged, or which consists of letters received

by the witness in due course of mail in response to letters duly addressed and mailed by him to the supposed writer, and who has thus acquired a knowledge of the handwriting of such person.''

In accordance with these provisions, it is not necessary that the witnesses shall be experts in the sense that they must have special knowledge, as it is sufficient thereunder that the document be proven by any person who, although he may not have witnessed the writing of the signature or signed the document as a witness, believes the same to be authentic because he has seen other documents bearing the same signature.

After an examination of the transcript of the record we find that the signatures on the documents referred to by the appellant were all proven to be genuine; in some cases because the witness knew the handwriting of the subscriber; in others because they were recognized as such by persons who although they had not seen the subscribers write their names on other occasions, nevertheless their duties brought them into official relations with them, and regarding others they knew the said signatures from documents on file in their offices.

These questions have been decided already by courts of the United States in clear and precise language, as follows:

''There are many modes in which one person can become acquainted with the handwriting of another, besides having seen him write or corresponded with him. * * *. If the court, on the preliminary examination of the witness, can see that he has that degree of knowledge of the party's handwriting which will enable him to judge of its genuineness, he should be permitted to give to the jury his opinion on the subject.'' *Rogers* v. *Ritter,* 12 Wall., 317.

''Any mode of communication which in the ordinary course of business induces a reasonable presumption of a writing being that of a party qualifies the person with whom such communication is made to testify to the genuineness of the party's signature.'' *Taylor* v. *Croninshield,* 5 N. Y. Leg. Obs., 209, annotated in 20 Cent. Dig., Evidence, column 3184.

Therefore, the errors attributed to the court in having admitted the documents authenticated in that manner do not exist.

The third error assigned is that the verdict of the jury is contrary to the evidence, and although the appellant admits in his brief that the evidence in this case was contradictory and that we have held in many decisions that when this is the case we will not disturb the findings of the trial court unless it be shown that the same was the result of passion, prejudice, partiality, or manifest error, he contends, nevertheless, that the jury acted in error because the court admitted the documents referred to and instructed the jury to consider the oral evidence in conjunction with the documentary evidence which, according to appellant, was not admissible.

We have already stated that the court did not err in admitting the documents to which the appellant refers, because the signatures were identified and consequently it cannot be sustained that the jury acted in error by reason of having considered improper documents; and much less so because the documents were delivered to the jury and the testimony regarding the genuineness of the signatures was submitted to it for consideration, it having, therefore, the opportunity to decide whether in effect the signatures had been identified or not as genuine. The admission by the court of documents of that character by ruling on the issues arising between the parties regarding their admissibility decides only that there is some evidence of the genuineness of the documents which should be submitted to the jury for its consideration of the credibility and weight of said testimony to the end that if deemed sufficient it may conclude that the documents were signed by the proper parties; and we find nothing in the instructions which the judge gave to the jury controverting this rule or conveying to the minds of the jury the impression that they must consider the genuineness of the signatures thereto to have been proved. On the contrary,

the court called the jury's attention to the power it had to decide upon the credibility of the witnesses including those who had testified as to the genuineness of the signatures.

It was also alleged orally that the appellant had not committed the crime of perjury of which he was accused, as he had not sworn falsely in stating that he had not been dismissed from any civil or military body, because although he was expelled from the Insular police force, that is not a civil or military body but an administrative body.

The expression "civil officer" means any officer who is not a military officer and includes all officers connected with the administration of the government except military officers; therefore all officers who hold appointments under the Government, be their duties executive or judicial or in the highest or lowest departments of the Government, are civil officers with the exception of officers of the army and navy. *State* v. *Clarke,* 31 Pac., 546; 21 Nev., 333; 18 L. R. A., 313; 37 Am. St. Rep., 517.

Although a person performs administrative duties he does not for that reason cease to be a civil officer since his powers and duties are created by the Legislature and the manner in which his appointment is made is immaterial. *Montgomery* v. *State* (Ala.), 18 So., 157, 159, cited with approval in *State* v. *Valle,* 41 Mo., 31.

Among civil officers are included police and other officers entrusted with the preservation of the public peace. *Porterfield* v. *State,* 21 S. W., 519; 92 Tenn., 289, and *Gooch* v. *Town of Exeter,* 48 Atl., 1100; 70 N. H., 413; 85 Am. St. Rep., 637.

Guided by the foregoing precedents and bearing in mind that the Insular police force was created by the Legislative Assembly of Porto Rico for the protection of persons and property as well as for the maintenance of public order, we must conclude that as policemen and their superior officers are civil officers, the corps which they form is a civil body.

Notwithstanding the foregoing, this point does not require further consideration because even if the appellant had been

right in his contention, as it results that the charge against him included the charge of having stated under oath in an application made by him to the chief of police for enlistment in that body that he had been a member thereof and had left of his own volition when he knew that he had been expelled therefrom, and as there was evidence to sustain that charge, the verdict of guilty rendered by the jury was justified.

For the foregoing reasons the appeal should be dismissed and the judgment affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.