EL PUEBLO, DEMANDANTE Y APELADO, v. MARTÍ, ACUSADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Mayagüez
en un .caso de perjurio.

No. 616.—Resuelto en febrero 19, 1914.

SUSPENSIÓN DEL JUICIO—EXCEPCIONES—RESOLUCIONES NO EXCEPCIONADAS.—Para
que esta corte pueda considerar las resoluciones de un tribunal sentenciador
denegando la suspensión del juicio solicitada por el acusado es necesario que
sean excepcionadas en el tribunal inferior.

FIRMAS DE DOCUMENTOS—AUTENTICIDAD DE LAS FIRMAS—PERITOS—PRUEBA PERI-
CIAL.—De acuerdo con los preceptos de los artículos 87 y 90 de la Ley de
Evidencia de marzo 9, 1905, para probar la autenticidad de las firmas de un
documento no es necesario que las personas que declaren hayan de ser peritos
en el sentido de que necesiten conocimientos especiales, pues dichos artículos
permiten que la firma del documento se pruebe por cualquier persona que,
aunque no haya visto poner la firma o no sea testigo en el documento, la
creyere auténtica porque ha visto otros escritos de ella.

INSTRUCCIONES AL JURADO—EFECTO DE LA ADMISIÓN DE PRUEBAS.—La admisión
que hace un juez de documentos cuya firma ha sido probada por medio de
personas que conocían dicha firma, resolviendo la controversia sustentada
entre las partes respecto a la admisibilidad de dichos documentos, lo único
que decide es que hay alguna evidencia de la autenticidad del documento que
debe ser sometido a la aprobación del jurado para que considere la credi-
bilidad y validez de esas declaraciones a fin de que, si las estima suficientes,
pueda tener los documentos como suscritos por las personas que los autorizan.

POLICÍA INSULAR—CUERPO CIVIL.—Los policías y los oficiales encargados de la
conservación de las paz pública son funcionarios civiles y el cuerpo de la
Policía Insular es civil.

Los hechos están expresados en la opinión.

·Abogado del Pueblo: Sr. *Charles E. Foote, Fiscal.*

Abogados del apelante: Sres. *Rafael López Landrón, Es-
teban Ramírez Nadal· y Pascasio Fajardo.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tri-
bunal.

El apelante, José Martí Font, fué acusado ante la Corte
de Distrito de Mayagüez del delito de perjurio, imputándo-
sele, que en una solicitud que juró ante el juez de paz de
Lajas y que remitió al Jefe de la Policía Insular con objeto
de ingresar en dicho cuerpo, declaró que no había sido expul-

sado de cuerpo alguno civil o militar, y que habiendo perte-
necido a la Policía Insular había salido de dicho cuerpo por
su propia voluntad, hecho que era esencial para el ingreso
en dicho cuerpo y que declaró falsamente, pues tenía conoci-
miento de que había sido expulsado del cuerpo de la Policía
Insular en el año de 1908 por conducta incorrecta e inmoral,
según la Orden General del cuerpo citado No. 152, que le
había sido comunicada.

Celebrado el juicio ante un jurado y habiéndolo éste encon-
trado culpable del dicho delito, la Corte de Distrito de Maya-
güez lo condenó a sufrir una pena de presidio, contra cuyo
fallo ha interpuesto el presente recurso de apelación.

Los fundamentos en que el apelante se basa para que
revoquemos la sentencia apelada son tres: 1, que el Juez de
la Corte de Distrito de Mayagüez cometió ciertos errores que
se especifican en el alegato; 2, que obró con marcada par-
cialidad, prejuicio y apasionamiento contra el apelante, y 3,
que el veredicto del jurado es contrario a la prueba prac-
ticada.

Trataremos en primer término el segundo de los errores
alegados, porque se refiere a procedimientos anteriores al
juicio.

De la exposición de hechos aparece que señalado el juicio
de este caso para el 20 de noviembre de 1912, en 15 de dicho
mes y año solicitó el Fiscal la suspensión del juicio, la que
le fué concedida por el juez de la corte inferior a reserva de
que dicha moción oral la reprodujera por escrito debidamente
jurado, el que nunca llegó a presentarse; que el 21 de enero
de 1913 se celebró el juicio sin que el jurado llegase a ponerse
de acuerdo, y que fué señalado nuevamente para el 28 de
marzo siguiente, en cuyo día fué reducido a prisión el acusado
por estimar la corte en méritos de una investigación que hizo,
que no había motivos para la suspensión que el acusado inte-
resó con certificación facultativa y moción dirigida al secre-
tario del tribunal. Estos hechos sirven de base al apelante
para fundamentar el segundo motivo de su recurso, expo-

niendo en su alegato, que al acceder el juez a la suspensión interesada por el Fiscal le perjudicó, por la probabilidad que perdió de haber obtenido en su causa un resultado final más satisfactorio que el del veredicto que rindió luego el jurado declarándolo culpable; y que al no acceder a la petición interesada por el apelante en vista de una investigación que practicó, la que no obra en los autos, y al reducirlo a prisión el mismo día del juicio, aunque por pocos instantes, le privó de reunir todos los pormenores de su defensa, estimando que tal conducta del juez demuestra parcialidad y prejuicio en contra del apelante.

Ninguna de esas dos resoluciones fué excepcionada por el apelante, como debió hacerlo si quería que nosotros considerásemos sus objeciones ahora, por lo que hemos de deducir que su silencio equivalió a su consentimiento a ellas; pero. de todos modos, no podemos llegar con el apelante a su conclusión de que esos solos hechos demuestren prejuicio ni parcialidad, pues a lo sumo significarían un debido ejercicio del poder discrecional que tiene la corte para conceder o nó una suspensión de juicio.

Los errores a que se refiere el alegato en cuanto al primer fundamento aducido para la revocación consisten todos en haber admitido la corte ciertos documentos y haberlos entregado al jurado para su consideración, siendo a nuestro modo de ver la teoría del apelante que por tratarse de documentos cuyas firmas habían de ser reconocidas, no podía esto llevarse a cabo sino por persona que previamente hubiera sido calificada como perito, y al efecto cita como infringidos los artículos 87, 90 y 91 de la Ley de Evidencia, porque las personas que declararon sobre la autentidad de las firmas no vieron estamparlas, no fueron calificadas como peritos, ni suscribieron los documentos como testigos.

Como no aparece del récord que haya tratado de probarse la autenticidad de ellas mediante cotejo por los testigos o el jurado con otros documentos admitidos como auténticos, no

tiene relación alguna a este caso el artículo 91, que es el último de los que se citan como infringidos.

En cuanto a los otros artículos, dicen así:

"Artículo 87.—Todo escrito podrá probarse:
"1. Por cualquiera persona que hubiere presenciado el otorgamiento del escrito; o
"2. Mediante evidencia de la autenticidad de la letra del otorgante; o
"3. Por un testigo firmante del escrito."
"Artículo 90.—La letra de una persona podrá probarse por cualquiera persona que la creyera suya y hubiere visto escribir; o hubiere visto algún escrito tenido por suyo y de acuerdo con el cual hubiere procedido o a cuyo cumplimiento se le hubiere obligado; o que consistiere en cartas recibidas por el testigo, debidamente cursadas por correo, en contestación a otras que hubiere dirigido por correo a su presunto corresponsal, llegando de este modo a conocer la letra de dicha persona."

De acuerdo con estos preceptos no es necesario que las personas que declaren hayan de ser peritos, en el sentido de que necesiten conocimientos especiales, pues ellos permiten que el documento se pruebe por cualquiera persona que, aunque no haya visto poner la firma o no sea testigo en el documento, la creyere auténtica porque ha visto otros escritos de ella.

Del examen que hemos hecho de la transcripción de la apelación hemos comprobado que las firmas de los documentos a que se refiere el apelante fueron todas reconocidas como auténticas, en unos casos porque el testigo conocía la letra del que lo suscribió; en otros porque fueron reconocidas como tales por personas que, aun cuando no habían visto escribir en otras ocasiones a las firmantes, sin embargo, por su cargo habían estado en relaciones oficiales con ellas, y respecto de otras, las conocían por documentos obrantes en su oficina.

Estas cuestiones han sido ya resueltas por las Cortes de los Estados Unidos en términos claros y precisos, a saber:

"Una persona puede por muchos medios familiarizarse con la escritura de otra, además del de verla escribir o de cartearse con ella. Si en el examen preliminar del testigo la corte ha podido ver que, por cualquier medio, una persona ha podido adquirir un cierto grado de conocimiento de la letra de dicha persona, al extremo de poder apreciar la identidad de la escritura, debiera permitírsele declarar ante el jurado expresando su opinión respecto a la cuestión." *Rogers* v. *Ritter*, 12 Wall., 317.

"Cualquier sistema de comunicación que en el curso ordinario de los negocios crea una presunción razonable de que la letra es de una persona determinada, habilita a la persona con quien semejante comunicación ha sido sostenida para testificar respecto a la legitimidad de la firma de dicha persona." *Taylor* v. *Crowningshield,* 5 N. Y., anotada en 20 Cent. Dig. Evidencia, columna 3184.

No existen, por tanto, los errores que se atribuyen a la corte por haber admitido los documentos reconocidos en esa forma.

El tercer motivo de error es el referente a que el veredicto del jurado es contrario a las pruebas; y si bien el apelante reconoce en su alegato que la evidencia de este caso es contradictoria y que hemos declarado en muchas decisiones que cuando esto ocurre no iremos contra la apreciación que de ella haya hecho el tribunal sentenciador, a menos que se nos demuestre que fué el resultado de pasión, prejuicio, parcialidad o manifiesto error, sostiene, sin embargo, que el jurado procedió con error, derivado de haber admitido la corte los documentos a que antes hacemos referencia, y de instruirle que atendiera a la prueba testifical y la compaginara con la documental la que, según el apelante, no era admisible.

Ya hemos dicho antes que no hubo error en la corte al admitir los documentos a que se refiere el apelante, porque sus firmas fueron reconocidas y, por consiguiente, no puede sostenerse que el jurado obrara con error producido por haber considerado documentos impropios, y mucho menos desde el momento en que los documentos fueron entregados al jurado

y las declaraciones sobre la legitimidad de sus firmas fueron sometidas a él para su consideración, teniendo, por tanto, la facultad de decidir si en efecto las firmas habían sido reconocidas o nó como auténticas. La admisión que un juez hace de documentos de esa naturaleza, resolviendo la controversia suscitada entre las partes respecto a su admisibilidad, lo único que decide es que hay alguna evidencia de la autenticidad del documento que debe ser sometida a la apreciación del jurado para que considere la credibilidad y validez de esas declaraciones a fin de que, si las estima suficientes, pueda tener los documentos como suscritos por las personas que los autorizan; y nada encontramos en las instrucciones del juez dadas al jurado que contradiga esta regla ni que lleve a su ánimo la creencia de que ha de tener por probada la legitimidad de las firmas obrantes en ellos pues, antes al contrario, llamó su atención a la facultad que tenía de apreciar la credibilidad de los testigos, comprendiendo así a los que habían declarado sobre la autenticidad de las firmas.

Se alegó también en el informe oral que el apelante no había cometido el delito de perjurio de que se le acusaba porque no había declarado falsamente al manifestar que no había sido expulsado de cuerpo alguno civil o militar, pues si fué expulsado de la Policía Insular, esta organización no es cuerpo civil o militar sino administrativo.

El término "funcionario civil" significa cualquier funcionario que no sea militar e incluye a todos los relacionados con la administración del país en contradicción a militar, por lo que todos los que tengan nombramiento bajo el gobierno, ya sean sus deberes ejecutivos o judiciales en los más altos o más bajos departamentos del gobierno, son funcionarios civiles con excepción de los militares y de la Armada. *State v. Clarke,* 31 Pac., 546, 21 Nev., 333, 18 L. R. A., 313, 37 Am. St. Rep., 517.

Aunque una persona desempeñe funciones administrati-

vas, no por eso deja de ser un funcionario civil, ya que sus poderes y sus deberes son creación de la legislatura, sin que sea de importancia el modo de hacer el nombramiento. *Montgomery* v. *State* (Ala.), 18 South, 157 y 159, citado con aprobación en *State* v. *Valle,* 41 Mo., 31.

Entre los funcionarios civiles están comprendidos los policías y otros oficiales encargados de la conservación de la paz pública. *Porterfield* v. *State,* 21 S. W., 519, 92 Tenn., 289, y *Gooch* v. *Town of Exeter,* 48 Atl., 1100, 70 N. H., 413, 85 Am. St. Rep., 637.

Sentados estos precedentes y teniendo en cuenta que la Policía Insular ha sido creada por la Asamblea Legislativa de Puerto Rico para la protección de las personas y de la propiedad, así como para el mantenimiento del orden público, hemos de llegar a la conclusión de que siendo los policías y sus jefes funcionarios civiles, el cuèrpo que forman es civil.

No obstante lo expuesto, este punto no necesita mayor consideración porque aunque el apelante tuviera razón en la tesis que sostuvo, como resulta que la acusación comprendió también el cargo de haber manifestado bajo juramento en una solicitud que el apelante hizo y envió al Jefe de la Policía para su ingreso en ese cuerpo, que había pertenecido a ella y que salió de la misma por su propia voluntad, cuando sabía que había sido expulsado de dicho cuerpo, y como hubo evidencia para sostener este cargo, el veredicto de culpabilidad rendido por el jurado estaría siempre justificado.

Por las razones expuestas el recurso debe ser desestimado y la sentencia confirmada.

*Confirmada.*


Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.