Barney, J.,
delivered the opinion of the court:
This is a claim by the executor of the late William A. Richardson for the- balance due for preparing and editing the legislation of the Fifty-third Congress for the first two sessions, for which only $1,000 has been paid him for the two sessions together, instead of $1,000 for each of the two sessions, as provided by the law in force when the work was done.
The publication of a supplement to the Revised Statutes of the United States was originally provided for by the “ joint resolution to provide for the publication and distribution of a supplement to the Revised Statutes,” approved J une 7, 1880. (1 Supplement Revised Statutes, 811.) Under the terms of this joint resolution Judge Richardson prepared and edited what is known as the first edition of the Supplement to the Revised Statutes, embracing the general and permanent legislation of Congress from 1874 to 1881.
By “An act to continue the publication of the Supplement to the Revised Statutes,” approved April 9, 1890 (1 Supplement Revised Statutes, 712), it was provided that the publication should be continued and issued in one volume by the editor of the existing Supplement. Under this act, the second edition of the first volume of the Supplement to the Revised Stautes was prepared and edited and published. It covered the same ground as the first edition, and also brought the work down to 1891, thus embracing all the general and permanent legislation of Congress from 1874, the date at which the Revised Statutes took effect, until 1891.
By “An act for the further continuance of the publication of the Supplement to the Revised Statutes of the United States,” approved February 27, 1898 (2 Supplement Revised Statutes, 91), it was provided:
“ That the publication of the Supplement to the Revised Statutes of the United States shall be further continued under the editorial charge of the editor of the existing Supplement and his assistants.
*241 “ Sec. 2. That at the end of each session of Congress a pamphlet edition of the permanent and general legislation of the session, with notes, references, and an index, substantially on the plan of the existing Supplement, shall be stereotyped and printed at the Government Printing Office; the plates and all rights thereto to be the property of the United States.”
After providing in the third section for the mode of distribution and sale of the pamphlets thus provided for, the act concluded, page 92:
“ Sec. 4. That there shall be paid to said editor for himself and his assistants, including the cost of all clerical labor and other expenses, the sum of one thousand dollars for preparing the pamphlet for each session of Congress.”
. Under the provisions of this act a pamphlet was prepared, edited, and published by Judge Richardson at the end of every session -of Congress.
The Fifty-third Congress, 1893 to 1895, held three sessions, the first of them being an extra session called by proclamation of the President. (28 Stat. L., 1219.) This session began August 7,1893, and adjourned November 3,1893. (28 Stat. L., 1.) Considerable legislation was enacted at this session which was, as required by the act of February 27, 1893, providing for continuation of the publication of the Supplement to the Revised Statutes, embodied in a pamphlet styled Volume II, No. 3, occupying from page 147 to page 160 of the second volume of the Supplement to the Revised Statutes. The legislation of each of the regular sessions, being the second and third sessions of the Fifty-third Congress, was also embodied in the pamphlets styled, respectively, Volume II, No. 4, running from page 161 to page 336, and Volume II, No. 5, running from page 357 to page 439, of the second volume of the Supplement to the Revised Statutes.
When Congress came to appropriate for the payment it did so by the sundry civil appropriation act of August 18, 1894, in the following language (28 Stat. L., 390) :
“ Publication of Supplement to Revised Statutes: To enable the Secretary of the Treasury to pay William A. Richardson, when the work shall be completed, in full for preparing and editing two pamphlets of the Supplement to the Revised Statutes of the United States, one for the extra ses *242 sion and one for the first session of the Fifty-third Congress, under the act of February 27, 1893, one thousand dollars.”
Judge Richardson sent in his account for the $1,000 appropriated by this act “ without waiving any claim of the balance due by the contract.” This $1,000 was all that was ever paid for editing the legislation for the first and second sessions or extra and first regular sessions of the Fifty-third Congress. His executor in this suit claims the remaining $1,000 under the provision of section 4 of the act of February 27,1893, which provides that there shall be paid to the editor “ the sum of $1,000 for preparing the pamphlet for each session of Congress.”
It would seem to be clear that the claimant’s decedent, while discharging the duties connected with the employment of editing the acts of Congress, was not an “ officer ” of the United States, and if so the question of reduction of salary during a term of office does not arise in this case. In considering that question in United States v. Hartwell, 6 Wall., 393, the Supreme Court said:
“An office is a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties.”
And further, in holding that the person under consideration was an officer of the United States, it said: “ His duties were continuing and permanent, not occasional or temporary.”
In United States v. Germaine, 99 U. S., 508, it was decided that civil surgeons appointed by the Commissioner of Pensions under section 4777, Revised Statutes, were not officers of the United States; and after quoting the above language from United States v. Hartwell approvingly, it was said:
“If we look to the nature of defendant’s employment, we think it equally clear that he is not an officer. In that case the court said the term embraces the ideas of tenure, duration, emolument, and duties, and that the latter were continuing and permanent, not occasional or temporary. In the case before us the duties are not continuing and permanent, and they are occasional and intermittent. The surgeon is only to act when called on by the Commissioner of Pensions in some special case, as wlien some pensioner or claimant of a pension presents himself for examination. He may make fifty of these examinations in a year, or none. He is *243 required to keep no place of business for the public use. He gives no bond and takes no oath, unless by some order of the Commissioner of Pensions of which we are not advised.”
In Hall v. Wiconsin, 103 U. S., 5, it was held that when the legislature of Wisconsin passed an act to provide for a geological, mineralogical, and agricultural survey of the State, which provided for the appointment of “commissioners ” to make the survey, such commissioners were not officers of the State; and the definition of an “ officer ” in United States v. Hartwell was quoted with approval. In United States v. Maurice, 2 Brock, 96, Mr. Chief Justice Marshall said.: “Although an office is an employment, it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to perform a service without becoming an officer.”
If, in the performance of such editorial duties, the decedent was not an officer of the United States, it necessarily follows that they were performed pursuant to some contractual relation existing between the parties. That such contractual relation can be created by legislative action, if consented to by the other party, has been frequently decided.
By the act of February 27, 1893, supra, the Government offered to pay the decedent “ for himself and his assistants, including the cost of all clerical labor and other expenses, •the sum of one thousand dollars for preparing the pamphlet for each session of Congress.” The decedent accepted this offer for the Fifty-third Congress, and prepared the pamphlets for the three sessions of that Congress, the first one being an extra session.
The question before us for decision then is, Whether the language in the act of February 27, 1893, included “extra sessions ” of Congress for which $1,000 should be paid for such services; and if so, if the act of August 18, 1894, supra, can be considered as giving it any other construction, or can operate in any way to deprive him of pay for such extra session.
We do not see how it can be said that the act of February 27, 1893, is open for construction. It provides “ that there shall be paid to said editor * * * one thousand dollars for preparing the pamphlet for each session of Congress;” and that there were three sessions of the Fifty-third Congress *244 can not be denied. This being so, the decedent was entitled to receive $1,000 lor such editorial work for each of said sessions of that Congress, unless the provisions in the appropriation act of August 18, 1894, supra, had the legal effect of reducing that amount to $1,000 as pay in full for the first regular session and the extra session of that Congress. Briefly stated, the case presented seems to us to stand thus: Congress had agreed to pay the decedent $1,000 for this work for each of the sessions of the Fifty-third Congress, and after the decedent had partially performed this work Congress appropriated $1,000 only to be paid to and be received by him in full for such work for the first and second sessions of that Congress. It is contended by the Government that the act of August 18, 1894, was the construction which Congress gave to the act of February 27, 1893, and that it considered the extra session and the regular session following as constituting one session only within the meaning of the fourth section of that act. If that section were of doubtful meaning, there might be some force in such contention, but when the language of a law is clear and unambiguous we do not see how Congress by subsequent legislation can give it a construction contrary to its plain terms, and thereby deprive a citizen of a vested right.
The cases of United States v. Fisher and United States v. Mitchell, 109 U. S., 143 and 146, have been referred to by the Government as sustaining this contention. In the Fisher case it was held that when Congress appropriates a sum “ in full compensation ” of the salary of a public officer, in futuro, the incumbent can not recover additional sum in this court, notwithstanding a prior statute fixes a larger salary than the sum so appropriated, the effect of the appropriation act being to change the rate of salary for the time being. In the Mitchell case the appropriation was for a less sum than the salary provided by statute and was not stated to be “ in full but it operated only as to future salaries, and was held to change the rate of salary for the time being, by reason of other legislation not necessary to be noted.
In Langston v. United States (21 C. Cls. R., 10; 118 U. S., 389), cited by both parties, it was held that a statute which fixes the annual salary of a public officer at a designated sum *245 without limitation as to time, is not abrogated or suspended by subsequent enactments appropriating a less amount for his services for a particular fiscal year, but containing no words which expressly or impliedly modify or repeal it.
We do not see any application of the foregoing cases to the case at bar. The sum which the decedent was to receive for the work specified was not a salary, but was a sum agreed upon for a certain kind and amount of work, the same as a contract to build a house or a ship for the Government. Salary is defined to be “A periodical allowance made as a compensation to a person for his official or professional services or for his regular work.” (Century Dictionary.)
In Chicago & Northwestern Railway Co. v. United States (104 U. S., 680), it was held that when a railroad company in aid of which Congress had granted land, entered into a contract with the United States to transport mails for four years over its roads at a price which conformed to the statutes then in force, Congress could not reduce this rate before the expiration of the contract.
In the case at bar the price agreed upon for the work to be performed was $1,000 for each session of the Fifty-third Congress. While the decedent was in the midst of the performance of this work, it is contended that Congress reduced this rate of compensation. We do not think the appropriation operated to change the law fixing this compensation, .and for that reason it must be held that the decedent was entitled to receive the price agreed upon by the act of February 27, 1893.
Judgment is ordered for the claimant in the sum of $1,000.