JAMES HART, PROSECUTOR, v. MAYOR AND COMMON
COUNCIL OF THE CITY OF NEWARK ET AL.

Submitted July 8, 1910—Decided November 5, 1910.

1. The "Act relative to the appointment of public officers in cities"
   (*Pamph. L.* 1906, *p.* 282), being confined by its title to public
   officers, is ineffectual as to the other classes of public servants
   mentioned in its text.
2. The "office janitor" of the city hall of Newark is a municipal
   employe, and not the holder of a public office.

On *certiorari.*

Before Justices PARKER and BERGEN.

For the prosecutor, *Edward Livingston Price.*

For the defendant, *Herbert Boggs.*

The opinion of the court was delivered by

PARKER, J.    The prosecutor was, on October 1st, 1908,
appointed "office janitor" of the new city hall of Newark for
an indefinite term at a stated salary, payable monthly.    This
appointment was made by resolution of the committee on
public buildings, adopted by the common council and ap-
proved by the mayor.    On May 6th, 1910, the following action
was taken by the council:

"WHEREAS, Experience has shown that the position of jani-
tor in the New City Hall now held by James Hart is a use-
less and unnecessary office and involves a waste of the people's
money, therefore, it is

"*Moved,* that the position of janitor in the New City Hall
now held by James Hart be and the same is hereby declared
vacant, said vacation to take effect May 31, 1910."

This was not approved by the mayor; and prosecutor, who
duly qualified and served continuously during the interim,
obtained the writ in the present case to test the legality of

his displacement, the gravamen of his claim being that the action of May 6th was a resolution of the common council, and was ineffective unless approved by the mayor. Assuming that it was in effect a resolution, the question is whether it was such a resolution as, under the existing state of the law, required the mayor's approval to make it effective.

Section 21 of the Newark city charter as amended (*Pamph. L.* 1857, *p.* 128) provides that "the common council shall from time to time appoint, by a majority of the whole number of members of said common council, a city clerk" and various enumerated officers, "and such other subordinate officers, not herein named, as they shall think necessary, for the better ordering and governing the said city, and the carrying into effect the powers and duties conferred and imposed upon the said common council by this act; every person who shall be appointed to office under the provisions of this act   *   *   * shall continue in office until the office for which he shall have been appointed shall be declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office."

It appears by stipulation in the case that the office or position of the prosecutor was an office or position created by a general ordinance of the city of Newark, passed previous to his said appointment, then and still in force and effect in said city of Newark.

The prosecutor concedes that under section 21, if unaffected by other legislation, the common council had power by vote of a majority of its whole number both to appoint him and declare his office vacant. But his claim is that the resolution appointing him was passed under and in view of the act of 1906 (*Pamph. L., p.* 282), "An act relative to the appointment of public officers in cities," providing in part that whenever general power has been granted to any board or body by the charter of any city or any supplement or amendment thereto for the appointment of necessary officers, *agents or servants,* such power may be exercised by resolution of the board or body empowered to make such appointments in the manner provided by the charter, &c.; that that act modifies the charter

provision as to appointments (and removals as well) by requiring them to be by resolution in the manner provided by the charter; and that the charter, by section 30, requires all resolutions to be signed by the mayor or passed over his veto. If the act of 1906 is constitutional and if it applies, the other steps in the argument are as we think unassailable, and the resolution under review must be set aside.

But we do not think this case is controlled by the act of 1906. Several reasons for this view are suggested by defendant, but we think it sufficient to say that while the body of the act includes agents or servants, the title relates only to public officers and is not broad enough to embrace, much less express, an intent to control the appointment or removal of agents or servants; and that prosecutor clearly falls within this latter class. The distinction between a public office and a "position" so-called, is clearly pointed out in our decisions. "An office," said the late Justice Dixon, in *Stewart* v. *Freeholders,* 32 *Vroom* 118, "is a place created, or at least recognized, by the law of the state and to which certain permanent public duties are assigned either by the law itself or by regulations adopted under authority of law. * * * A position, within the purview of this act (the Veteran act of 1895), is defined to be a place, the duties of which are continuous and permanent, analogous to those of an office, and which pertain to the position as such." So it was held that the following places, though "positions," were not offices: Deputy warden of an almshouse, *Stewart* v. *Freeholders, supra;* bridge-tender on a county bridge, *Lewis* v. *Jersey City,* 22 *Vroom* 240; janitor of a court house, *Peterson* v. *Freeholders,* 34 *Id.* 57; *Daily* v. *Freeholders,* 29 *Id.* 319; janitor of a police station, *Dolan* v. *Orange,* 41 *Id.* 106. On the other hand, in *Uffert* v. *Vogt,* 36 *Id.* 377, the receiver of taxes of Newark was held a public officer, his duties being defined by the charter; and the same ruling was made in *Bownes* v. *Meehan,* 16 *Id.* 189, as to the keeper of the jail upon a county farm appointed pursuant to a statute (*Pamph. L.* 1863, *p.* 170) authorizing the appointment of such keeper and defining his duties.

Applying the test recognized in these decisions, it is obvious that prosecutor is not a public officer. His place is neither created nor recognized by statute; its duties are not prescribed by statute nor so far as appears, by any regulations adopted by common council under its charter powers; and naturally so, because the duties of a mere janitor are implied in the name itself and need no such action. As a result, while prosecutor's position may be within the language of the body of the act of 1896, it is not within its title and he cannot invoke that act. His case is consequently governed by the charter itself. In this aspect he appears to come within the class of "other subordinate officers" mentioned in section 21 of the charter. If not within that class it is difficult to see by what authority he was appointed at all. As such "subordinate officer" he was a mere employe, and liable to discharge by vote of the council under section 21 to appoint his successor, and the qualification of that successor, or by similar vote declaring a vacancy. The council pursued this latter course as it had a right to do.

The fact that the act of 1906 was recognized at the time of prosecutor's appointment is not material. In our view of the case, the submission of the appointment to the mayor was mere surplusage and could not give prosecutor any better standing than an appointment without such submission. In *Volk* v. *Newark,* 18 *Vroom* 117, it was held that the council could not, even by ordinance, limit its right to appoint and remove by a majority vote. Much less could such right be limited by a simple act of supererogation. The same reasoning applies to the act of dismissal, by whatever name called.

The writ of *certiorari* should be dismissed.