[No. 2143]

# STATE OF NEVADA, Ex Rel. ZEB KENDALL, PETITIONER, *v.* GEORGE A. COLE, STATE CONTROLLER, RESPONDENT.

[148 Pac. 551]

1. STATES—OFFICERS AND EMPLOYEES—ELIGIBILITY—"OFFICE."

Under Stats. 1913, c. 128, sec. 1, creating the office of exposition commissioner of the state for the Panama-Pacific and the Panama-California expositions, and authorizing the governor to appoint an exposition commissioner, and section 2, creating the board of directors for the state for such expositions, whose duty it shall be to employ superintendents, clerks, and other persons upon such terms as may be deemed just and equitable to carry out the provisions of that act, and to cooperate and advise with the exposition commissioner, the position occupied by a superintendent so employed was not an "office" within Const. art. 4, sec. 8, providing that no senator or member of assembly shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under the state, which shall have been created or the emoluments of which shall have been increased during his term, except such office as may be filled by election by the people, as the term "office" embraces the ideas of continued duration, fees, or emoluments and duties, and such superintendent was intrusted with none of the sovereign power of the state, his compensation, period of employment, and the details of his duties being all matters of contract with the board of directors, especially as he was not required to take an oath as required by Const. art. 15, sec. 2, in the case of officers, indicating that the state officers did not consider him an officer.

2. CONSTITUTIONAL LAW — STATUTES — CONSTRUCTION — PRACTICAL CONSTRUCTION BY OTHER DEPARTMENTS OF THE GOVERNMENT.

Where a doubt exists as to the proper construction to be placed on a constitutional or statutory provision, courts will give weight to the construction placed thereon by other coordinate branches of the government.

3. MANDAMUS—CLAIMS FOR SALARY—REFUSAL TO AUDIT—REMEDY.

Where the state controller refused to draw his warrant for the salary of a superintendent, employed by the board of directors for the Panama-Pacific and Panama-California expositions, pursuant to Stats. 1913, c. 128, he could not be compelled to do so by *mandamus*, the remedy being by action, notwithstanding section 6 of such act, making appropriations for the state's exhibits at such expositions, and providing that all disbursements from such appropriations should be on certificates of the exposition commissioner, approved by a majority of the directors and by the state board of examiners, when the state controller should draw his warrant and the state treasurer pay the same, as the controller is a constitutional officer and

his duty to audit all claims against the state, except obligations fixed by law, is a constitutional one, and cannot be infringed upon by legislative enactment.

ORIGINAL PROCEEDING in *mandamus* by Zeb Kendall, superintendent of Nevada exhibits at the Panama-Pacific exposition, to compel the State Controller to draw a warrant in favor of petitioner as said superintendent. **Petition dismissed.**

*Geo. A. Bartlett,* for Petitioner:

Petitioner was not inhibited by section 8, article 4, of the constitution from holding the position of "superintendent" under the act of 1913 (Stats. 1913, p. 169), authorizing the board of directors of the Panama-Pacific and Panama-California expositions to employ "superintendents, directors, clerks, and other persons," for the simple reason that such position of "superintendent" is not an office within the meaning of the constitution. (*Hand* v. *Cook,* 29 Nev. 542; *U. S.* v. *Hartwell,* 6 Wall. 385; *Bunn* v. *People,* 45 Ill. 397; *State* v. *Hooker,* 63 Am. St. Rep. 178, and note; *Hall* v. *Wisconsin,* 103 U. S. 9; *U. S.* v. *Maurice,* 2 Brock. 96; *Olmstead* v. *Mayor,* 42 N.Y. Sup. Ct. 481; *Shelby* v. *Alcorn,* 72 Am. Dec. 180, and note; Mechem on Officers, sec. 4.)

*Wm. Woodburn, Sr., Wm. Woodburn, Jr.,* and *Wm. McKnight,* for Respondent:

The question to be decided by the court is whether the employment of relator as superintendent at a salary of $300 per month by the board of directors of the Panama expositions named in the act of the legislature approved March 18, 1913, is a civil office of profit. If it is a civil office of profit, relator is disqualified from holding, having been a member of the legislature which created the office. (Const. Nev. art. 4, sec. 8.) The term "office," in its common acceptation, is sufficiently comprehensive to include all persons in any public station or *employment* which has any duty concerning the public. It is the duty of the office and the nature of that duty which

makes him a public officer. (*Vaughn* v. *English*, 8 Cal. 41;
*U. S.* v. *Hartwell*, 6 Wall. 385; *State* v. *Kennon*, 7 Ohio St.
557; 15 Eng. Com. Law Rep. 495; 22 L. R. A. 363; *People*
v. *Nernon*, 158 N. Y. 227; Mechem on Public Officers;
*Rowland* v. *Mayor*, 83 N. Y. 396; *Guthrie Daily Leader*
v. *Cameron*, 41 Pac. 636; *State* v. *Gooding*, 124 Pac. 791;
*Patton* v. *Board of Health*, 127 Cal. 394; *Sacalaris* v.
*E. & P. R. Co.*, 18 Nev. 161; *Clark* v. *Stanley*, 66 N. C.
59; *Kenyon* v. *State*, 7 Ohio St. 557; *Michael* v. *State*, 50
South. 929.)

In construing this provision of the constitution in its
application to the petition at bar, "the courts will not
ignore the general spirit of the instrument in construing
provisions actually contained therein, for it is the real
intent and purpose, rather than the strict interpretation
—the essence, rather than the form—that is sought to
be ascertained." (*People* v. *Fancher*, 50 N. Y. 288; *State*
v. *Conlon*, 65 Ky. 478.)

"Courts are not justified in giving a strained construction
or an astute interpretation to a constitutional clause, such
as will avoid the intent of the framers of the instrument,
in order to relieve against any individual hardship."
(*Law* v. *People*, 87 Ill. 385.)

By the Court, COLEMAN, J.:

[1] The legislature, in 1913, passed an act providing
for exhibits at the San Diego and San Francisco exposi-
tions (Stats. 1913, c. 128, p. 169), sections 1 and 2 of which
read as follows:

"SECTION 1.    On or before the first Monday in May,
1913, the governor of the State of Nevada shall appoint a
citizen of the State of Nevada to be known as expo-
sition commissioner of the State of Nevada for the
Panama-Pacific International Exposition and the Panama-
California Exposition, and the office of said exposition
commissioner is hereby created.

"SEC. 2.    Tasker L. Oddie, Gilbert C. Ross, and Geo. B.
Thatcher shall constitute a board of directors for the
State of Nevada for said expositions, whose duty it shall

be to employ superintendents, directors, clerks and other persons, upon such terms as may be deemed just and equitable, for the purpose of carrying out the provisions of this act, and for the further purpose of cooperating and advising with the exposition commissioner in carrying out the provisions of this act"

—and making appropriations therefor. Thereafter the governor appointed an exposition commissioner, and on the 29th of April, 1914, the board of directors employed petitioner as superintendent, and fixed his salary at $300 a month. Petitioner entered upon the discharge of his duties in the month of May, 1914, and in due time presented his bill to the exposition commissioner for his salary for said month, which was approved by said commissioner, and later approved by the board of examiners. The bill so certified and approved was presented to Jacob Eggers, the then state controller, who refused to draw his warrant for the same. Petitioner thereafter made this application for a peremptory writ of *mandamus* to compel respondent to draw a warrant in his behalf for the amount of his claim, alleging his employment as superintendent, the agreed monthly salary, and the rendition of services for the month for which recovery is sought. Respondent filed an answer, in which it is alleged that petitioner was at the time of the passage of the act mentioned a member of the state senate and voted for the bill, and was such senator at the time of his appointment as superintendent, and during the month of May, when he rendered the services alleged, and contends that under section 8, art. 4, of the constitution, which reads:

"No senator or members of assembly shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under this state which shall have been created, or the emoluments of which shall have been increased during such term, except such office as may be filed by elections by the people"

—petitioner was disqualified from serving in the position

to which he was appointed, and from receiving a salary from the state. The constitutionality of the act under which it is alleged that relator was employed is not questioned, nor is it contended that relator acted in bad faith in voting for the bill, or had any expectation that he would be in any way benefited by its passage. It is purely a question of whether. or not relator is precluded from holding the position by virtue of the section of the constitution quoted, and in arriving at a conclusion we need only to determine if the position of superintendent is a civil office. An office does not spring into existence spontaneously. It is brought into existence, either under the terms of the constitution, by legislative enactment, or by some municipal body, pursuant to authority delegated to it. "All public offices must originally have been created by.the sovereign as the foundation of government." (3 Cruise's Dig. p. 109, sec. 5.)

Lord Coke says that an office can only be created by an act of parliament. (2 Inst. 540; 7 Bacon, Abr., p. 281, title. "Offices and Officers"; *Eliason* v. *Coleman*, 86 N. C. 235; *White* v. *Clements*, 39 Ga. 274; *Ex Parte Lambert*, 52 Ala. 79; *People* v. *Murray*, 70 N. Y. 521; *State* v. *Kennon*, 7 Ohio St. 547; *Gosman* v. *State*, 106 Ind. 203, 6 N. E. 349; *Hall* v. *Wis.*, 103 U. S. 5, 26 L. Ed. 302; *People* v. *Langdon*, 40 Mich. 673; *State* v. *Bus*, 135 Mo. 325, 36 S. W. 636, 33 L. R. A. 616; *State* v. *Brennan*, 49 Ohio St. 33, 29 N. E. 593; *Shelby* v. *Alcorn*, 36 Miss. 273, 72 Am. Dec. 169; *Baltimore* v. *Lyman*, 92 Md. 591, 48 Atl. 145, 52 L. R. A. 406, 84 Am. St. Rep. 524; *State* v. *Broome*, 61 N. J. Law, 115, 38 Atl. 841; *State* v. *Jennings*, 57 Ohio St. 415, 49 N. E. 404, 63 Am. St. Rep. 723; *Miller* v. *Warner*, 42 App. Div. 209, 59 N. Y. Supp. 956.)

It seems to us that since an office is a creature of the constitution, of legislative enactment, or of some municipal body, we must look to the instrument which it is alleged created the position to determine the intent of the body creating, which, in this case, is the legislature. It would certainly be a remarkable situation if the legislature by the act in question created an office without

any intention so to do. Indeed, it has been held that, in determining whether or not the legislature in fact created an office, we must look to the intent of the legislature. (*Shepherd* v. *Com.*, 1 Serg. & R. 1; *Rowland* v. *Mayor*, 83 N. Y. 372; *Bunn* v. *People*, 45 Ill. 397; *Ryan* v. *Mayor*, 50 How. Prac. 91.)

"When the legislature created and called it an 'office' it was an office, not because the peculiar duties of the place constituted it such, but because the creative will of the law-making power impressed that stamp upon it." (*Brown* v. *Turner*, 70 N. C. 99.)

In arriving at the intent of the legislature there is an old rule which is well recognized, "*Expressio unius est exclusio alterius.*" (*State* v. *Blasdel*, 6 Nev. 40; *State* v. *Hamilton*, 13 Nev. 389; *In Re Bailey's Estate*, 31 Nev. 381, 103 Pac. 232, Ann. Cas. 1912a, 743.) If this is a safe rule, then why is it not equally safe to conclude that where the legislature specifically designates one position provided for thereunder as an "office," and does not so designate another, the one not so designated was not intended by the legislature to attain to the dignity of an office? To us this theory is logical. It will be noted that in the act in question the "office of said exposition commissioner" is expressly created, while the board of directors are empowered to "*employ* superintendents, clerks and others." If the rule contended for is sound, as we are confident it is, there is no doubt but that the legislature did not intend to create the office of superintendent, and relator is not a civil officer.

While it may appear to be a simple matter to determine whether a position is an office or not, the courts have experienced a good deal of trouble in doing so.

Blackstone defines an office to be:

"A right to exercise a public or private employment, and take the fees and emoluments thereunto belonging." (2 Black. Comm. c. 3, p. 36.)

"Offices consist of a right and corresponding duty, to execute a public or private trust, and to take the emoluments belonging thereto." (3 Kent Comm. 454.)

"A public office is the right, authority, and duty, created and conferred by the law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." (Mechem on Pub. Officers, sec. 1.)

Professor Wyman of Harvard defines a public office to be:

"The right, authority and duty conferred by law by which, for a given period, either fixed by law or through the pleasure of the creating power of government, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The warrant to exercise powers is conferred, not by contract, but by law." (Wyman, Pub. Officers, sec. 44.)

"A right to exercise a public function or employment, and to take the fees and emoluments belonging to it." (Bouv. Law Dict.)

"And we apprehend that it may be stated as universally true that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it an officer." (*Shelby* v. *Alcorn,* 36 Miss. 289, 72 Am. Dec. 169.)

An office is:

"An employment on behalf of the government, in any station of public trust, not merely transient, occasional, or incidental." (*In Re Attorneys,* 20 Johns. 492.)

"'Public office,' as used in the constitution, has respect to a permanent trust to be exercised in behalf of the government, or of all citizens who may need the intervention of a public functionary or officer, and in all matters within the range of the duties pertaining to the character of the trust." (*In Re Hathaway,* 71 N. Y. 238.)

"When an individual has been appointed or elected, in a manner prescribed by law, has a designation or title

given him by law, and exercises functions concerning the public, assigned to him by law, he must be regarded as a public officer." (*Bradford* v. *Justices*, 33 Ga. 336.)

"While, generally speaking, an officer is one employed on behalf of the government, in a strict legal sense it means an employment on behalf of the government in some fixed and permanent capacity, not in a capacity merely transient, occasional, or incidental. Those engaged in mere transient or occasional employments on behalf of the municipality are more properly employees than officers." (*Bilger* v. *State*, 63 Wash. 457, 116 Pac. 19.)

"Where, however, the officer exercises important public duties, and has delegated to him some of the functions of government, and his office is for a fixed term, and the powers, duties, and emoluments become vested in a successor when the office becomes vacant, such an official may properly be called a 'public officer.'" (*Richie* v. *Philadelphia*, 225 Pa. 511, 74 Atl. 430, 26 L. R. A. n. s. 289.)

"Where, by virtue of law, a person is clothed, not as an incidental or transient authority, but for such time as denotes duration and continuance, with independent power to control the property of the public, or with public functions to be exercised in the supposed interest of the people, the service to be compensated by a stated yearly salary, and the occupant having a designation or title, the position so created is a public office." (*State* v. *Brennan*, 49 Ohio St. 33, 29 N. E. 593.)

Chief Justice Marshall, while on the circuit, in the case of *U. S.* v. *Maurice*, 2 Brock. 103 Fed. Cas. No. 15,747, said:

"Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer. But, if a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station without any contract defining them, if those duties continue, though the person be changed,

it seems very diffi̧cult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer."

The great weight of authority holds the term "office" to embrace the ideas of tenure, duration, fees, or emoluments, and duties. (*Hand* v. *Cook*, 29 Nev. 542, 92 Pac. 3; Burrill's Law Dictionary, 257, title "Office"; Throop, Pub. Officers, secs. 2–10; *Foltz* v. *Kerlin*, 105 Ind. 221, 4 N. E. 439, 55 Am. Rep. 197; *Chism* v. *Martin*, 57 Ark. 86, 20 S. W. 809; *In Re House Bill*, 9 Colo. 629, 21 Pac. 473; *People* v. *Nostrand*, 46 N. Y. 381; *People* v. *Nichols*, 52 N. Y. 485, 11 Am. Rep. 734; *People* v. *Duane*, 121 N. Y. 375, 24 N. E. 845; *Olmstead* v. *Mayor*, 42 N. Y. Super. Ct. 487; *State* v. *Brennan*, 49 Ohio St. 38, 29 N. E. 593; *Shaw* v. *Jones*, 6 Ohio Dec. 462; *Bryan* v. *Patrick*, 124 N. C. 662, 33 S. E. 151; *United States* v. *Fisher*, 8 Fed. 415; *Hall* v. *Wis.*, 103 U. S. 8, 26 L. Ed. 302; *State* v. *Theus*, 114 La. 1097, 38 South. 873; *State* v. *Hocker*, 39 Fla. 477, 22 South. 723, 63 Am. St. Rep. 174; *Ptacek* v. *People*, 94 Ill. App. 578; *Kendall* v. *Reybould*, 13 Utah, 226, 44 Pac. 1034; *United States* v. *Hartwell*, 6 Wall. 393, 18 L. Ed. 830; *Drury, Exr.*, v. *United States*, 43 Ct. Cl. 242; *State, ex rel. Gruber*, v. *Champlin*, 2 Bailey, 220; *Brown* v. *Russell*, 166 Mass. 14, 43 N. E. 1005, 32 L. R. A. 253, 55 Am. St. Rep. 357.)

It also held that the taking of an oath is some indication by which to determine if a position is an office. (*Goud* v. *Portland*, 96 Me. 126, 51 Atl. 820; *People* v. *Langdon*, 40 Mich. 682; *People* v. *Bidell*, 2 Hill, 199; *Kavanaugh* v. *State*, 41 Ala. 399; *Board* v. *Goldsborough*, 90 Md. 193, 44 Atl. 1058; *State* v. *Gray*, 91 Mo. App. 438; *Fox* v. *Mohawk*, 165 N. Y. 517, 59 N. E. 353, 51 L. R. A. 681, 80 Am. St. Rep. 767; *State* v. *Slagle*, 115 Tenn. 336, 89 S. W. 326; *Reg.* v. *Simpson*, 4 Cox C. C. 276; *Collins* v. *Mayor*, 3 Hun, 680; *Worthy* v. *Barrett*, 63 N. C. 199.)

[2] Section 2, art. 15, of the constitution of Nevada provides that all officers shall take an oath. It does not appear that relator was required to take an oath. Evidently the state officers did not consider relator an officer.

"Where a doubt may exist as to the proper construction to be placed on a constitutional or statutory provision, courts will give weight to the construction placed thereon by other coordinate branches of government." (*State* v. *Brodigan*, 35 Nev. 39, 126 Pac. 682.)

It is held by a great many courts that to be an officer one must be charged by law with duties involving an exercise of some part of the sovereign power of the state. (High, Extr. Rem. sec. 625; *Opinion of Judges*, 3 Me. 481; *Shelby* v. *Alcorn*, 36 Miss. 284, 72 Am. Dec. 169; *Worcester* v. *Goldsborough*, 90 Md. 193, 44 Atl. 1055; *Attorney-General* v. *Drohan*, 169 Mass. 534, 48 N. E. 279, 61 Am. St. Rep. 301; *Attorney-General* v. *Jochim*, 99 Mich. 367, 58 N. W. 611, 23 L. R. A. 699, 41 Am. St. Rep. 606; *State* v. *Hacker*, 39 Fla. 477, 22 South. 721, 63 Am. St. Rep. 177; Wyman, Pub. Off. sec. 44; *State* v. *Jennings*, 57 Ohio St. 415, 49 N. E. 409, 63 Am. St. Rep. 723; *Com.* v. *Bush*, 131 Ky. 384, 115 S. W. 249; *State* v. *Smith*, 145 N. C. 476, 59 S. E. 649; *McArthur* v. *Nelson*, 81 Ky. 67; *State* v. *Thompson*, 122 N. C. 493, 29 S. E. 720; *Sanders* v. *Belue*, 78 S. C. 171, 58 S. E. 763; *Shaw* v. *Jones*, 6 Ohio Dec. 462; *Richie* v. *Philadelphia*, 225 Pa. 511, 74 Atl. 430, 26 L. R. A. n. s. 289; *State* v. *Valle*, 41 Mo. 29; *Eliason* v. *Coleman*, 86 N. C. 235; *Com.* v. *Binns*, 17 Serg. & R. 244.)

A janitor of a courthouse has been held not to be an officer. (*State* v. *Board of Chosen Freeholders*, 58 N. J. Law, 319, 33 Atl. 739.)

A guard in a county jail is not an officer. (*State* v. *Board*, 58 N. J. Law, 33 Atl. 943.)

A deputy warden of an almshouse is not an officer. (*Stewart* v. *Hudson*, 61 N. J. Law, 117, 38 Atl. 842.)

A janitor of a police station is not an officer. (*Dolan* v. *Orange*, 70 N. J. Law, 106, 56 Atl. 130.)

A keeper of a reservoir is not an officer. (*Hardy* v. *Orange*, 61 N. J. Law, 620, 42 Atl. 581.)

A janitor of a city hall is not an officer. (*Hart* v. *Newark*, 80 N. J. Law, 600, 77 Atl. 1086.)

A school commissioner is not an officer. (*Board* v. *Goldsborough*, 90 Md. 193, 44 Atl. 1055.)

A commissioner under a statute of Pennsylvania to settle compensation of claimants to land was held not an officer. (*Sheperd* v. *Com.*, 1 Serg. & R. 1.)

A public administrator was held not an officer. (*State* v. *Smith*, 145 N. C. 476, 59 S. E. 650.)

An act authorizing the employment of an attorney for the Creek Nation did not create an office. (*Porter* v. *Murphy*, 7 Ind. T. 395, 104 S. W. 669.)

An act authorizing the appointment of a person to look after the forests did not create an office. (*Opinion of Judges*, 3 Me. 481.)

The commissioners appointed pursuant to "An act to fund the floating indebtedness of San Francisco" are not officers. (*People* v. *Middleton*, 28 Cal. 604.)

The persons appointed by an act of the legislature as managers to conduct and execute a lottery grant for the benefit of a college are not public officers. (*State* v. *Platt*, 4 Harr. 154.)

Members of a bridge commission are not public officers. (*State* v. *George*, 22 Or. 142, 29 Pac. 356, 16 L. R. A. 737, 29 Am. St. Rep. 586.)

Commissioners appointed by the legislature to lay a pavement within a city are not public officers. (*Greaton* v. *Griffin*, 4 Abb. Prac. N. S. 310.)

It was held that the regents of the University of California were not officers. (*Lundy* v. *Delmas*, 104 Cal. 655, 38 Pac. 445, 26 L. R. A. 651.)

"In the case now before us we find the superintendent of public instruction is not appointed by the mayor, nor elected by the people, nor appointed by joint convention of the two branches of the council. He takes no official oath, gives no official bond, has no commission issued to him, and has no fixed or definite tenure of office, but is appointed at the pleasure of the school board. It also appears from an examination of the charter that all the executive power relating to educational matters is vested in a department known as "the department of education,' and this department is composed of the board of school commissioners. The superintendent of public instruction

exercises no power except what is derived from and through this board. He is simply, then, an employee or the agent of the school board, and not a municipal official, within the meaning of the charter." (*Baltimore* v. *Lyman*, 92 Md. 591, 48 Atl. 145, 52 L. R. A. 406, 84 Am. St. Rep. 524.) To the same effect, *State, ex rel. Barnhill*, v. *Thompson*, 122 N. C. 493, 29 S. E. 720.

The case of *Sheboygan Co.* v. *Parker*, 3 Wall. 93, 18 L. Ed. 33, is one growing out of an act of the legislature authorizing the county to aid in the construction of a railroad. The act constituted Lewis Curtis, Billy Williams, and three other persons a board of commissioners for aiding the project. The act authorized the commissioners, after the people had approved such action, to borrow money on the credit of the county and to issue bonds, to be signed by the president and secretary of the commission. The court said:

"Such persons, in performance of their special duty, are in no proper sense 'county officers.' They do not exercise any of the political functions of county officers, such as levying taxes, etc. They do not exercise 'continuously, and as a part of the regular and permanent administration of the government, any important public powers, trusts, or duties.' An officer of the county is one by whom the county performs its usual political functions; its functions of government."

The case of *Town of Salem* v. *McClintock*, 16 Ind. App. 656, 46 N. E. 39, 59 Am. St. Rep. 330, is one in which a man by the name of Craycraft was employed as superintendent of the water-works for the term of one year, and a bond was required of him. The court says:

"The bonds declared upon in appellant's complaint are not official bonds; but the trustees of the town had the right to employ Craycraft as a superintendent in the management of the water-works, and to accept a bond from him conditioned for the faithful performance of his duties as such superintendent, and he became in no sense an officer of the town by such employment.     *     *     *     There is nothing in the record of this cause showing that the trustees of the town of Salem had, by ordinance or

resolution, creating the office of superintendent of the water-works, or by any ordinance or resolution defined, or attempted to define, the duties of a superintendent of water-works."

The case of *McArthur* v. *Nelson*, 81 Ky. 67, is one in which the circuit judge, pursuant to legislative authority, appointed three commissioners, to hold office at his pleasure, whose duties were to have a courthouse constructed at a cost not to exceed $50,000, and to issue bonds therefor, for the payment of which they were empowered to levy an annual tax. The court says:

"Nor do we think it was necessary for the legislature to prescribe the term of office for the commissioners, although they are made a body corporate and politic, with power to sue and be sued, contract, and be contracted with, under the style of the 'commissioners for the courthouse district.' They are not district officers within the meaning of section 10 of article 6 of the constitution, but are the mere agents for the district, required by the act to discharge certain duties with reference to the building of the courthouse, and when those duties end their employment terminates."

In *Miller* v. *Warner*, 42 App. Div. 209, 59 N. Y. Supp. 956, it was held that the superintendent of police telegraph system of Rochester was not an officer, the court saying:

"The learned counsel in this action do not cite any statute of this state creating * * * the office of superintendent of the police telegraph system in the city of Rochester, and in the absence of such an act there can be no such officer. * * * Certain incidents pertain to a public office, tenure for life, during good behavior, for years, or at the pleasure of the appointing power."

In the matter of additional compensation (4 Compt. Dec. 697) it was held that one Dickinson, who was a disbursing agent for the World's Columbian commission, and who was also secretary of the commission, was not an officer.

Commissioners appointed by a board of aldermen to lay out a highway under the statute of Rhode Island are not public officers. The court says:

"The cases cited by counsel for relators, bearing upon

the question of what constitutes a public office, are all in practical harmony with the view we have taken. We will briefly refer to a few of them. *Vaughn* v. *English*, 8 Cal. 39, holds that the clerks allowed by law in the offices of the secretary of state, controller, and treasurer are officers. The act under which the respondent in that case was appointed expressly recognized the position as that of an officer. He was appointed by the government, the duties he was required to perform concerned the public, he had a definite tenure of office, and he was paid a salary out of the public treasury. The court, in referring to the act of the legislature in question said: 'The act is entitled "An act to reduce and fix the salaries of officers and members of the legislature," and the clerks of the different departments are included in the list of officers whose salaries are fixed by the act.' *Bradford* v. *Justices*, 33 Ga. 332, holds that a county treasurer is a public officer. The case shows that the laws of that state provide for the election of such an officer by the people and that he exercises independent functions concerning the public, assigned to him by law. *Shelby* v. *Alcorn*, 36 Miss. 273, 72 Am. Dec. 169, holds that a levy commissioner is a public officer. The case shows that said office is one created by statute; that the tenure thereof is two years; that he is required to give bond; that he receives and disburses public funds; and that the act under which he is appointed expressly recognizes him as a public officer. *People* v. *Nostrand*, 46 N. Y. 375, holds that commissioners authorized by chapter 905, Laws 1869 (authorizing the construction of a highway in certain towns), as amended by chapter 750, Laws 1870, are public officers. By virtue of said acts the commissioners were authorized to exercise a portion of the functions of government. They had the power of taking private property for public use by right of eminent domain, and, also, to expend a large amount of money in the construction of a public improvement. In short, they possessed every attribute and characteristic of public officers. The vital difference between that case and the one before us, therefore, is so apparent that comment is unnecessary. *Gray* v. *Granger*, 17 R. I. 201, 21

Atl. 342, holds that the city engineer of the city of Providence is a public officer. There can be no doubt of the correctness of the decision. His election was authorized by a statute which expressly styles him an officer. He was elected by the city council in joint convention, pursuant to an ordinance of the city, and he was specially charged with the performance of public duties. *The other cases cited are similar in principal, the persons held to be public officers being expressly recognized as such by statute and being also clothed with some portion of the sovereign functions of government."* (*Attorney-General* v. *McCaughey,* 21 R. I. 346, 43 Atl. 646.) [Italics ours.]

It will be seen from a careful reading of the foregoing quotation that the authorities chiefly relied upon by respondent are not in fact antagonistic to the contention of relator.

It is contended that the case of *Vaughn* v. *English,* 8 Cal. 39, is controlling because of the fact that our constitution was taken from California, and because that case was decided before our constitution was adopted. While it is a general rule that when a statute which has received judicial construction by the highest court of the state in which it originated is adopted by another state, such adoption is subject to the construction put upon it by the courts of the state where it originated (36 Cyc. 1154), such is not the situation in the Vaughn-English case. In that case no illusion was made to the constitution of the state, and the act out of which the litigation grew has not been adopted by Nevada. Consequently, while we have no quarrel with the rule, it is not applicable. In the Vaughn-English case, *supra,* it is said:

"The term 'officer,' in its common acceptation, is sufficiently comprehensive to include all persons in any public station or employment conferred by government."

This is indeed a very broad statement, and one which the Supreme Court of California has practically repudiated several times. In the case of *McDaniel* v. *Yuba County,* 14 Cal. 444, it was held that the examining physician of the county hospital was not an officer, but an employee; and in the case of *White* v. *Alameda,* 124

Cal. 95, 56 Pa. 795, it was held that a driver of a street wagon, with a salary fixed by the board of trustees, was not an officer, but a mere employee. In the case of *Patton* v. *Board of Health*, 127 Cal. 393, 59 Pac. 704, 28 Am. St. Rep. 66, it is said:

"But not all employments authorized by law are public offices in the sense of the constitution."

Since the court in which the statement alluded to originated has repudiated it three times, we fail to see why it should have any weight with us.

It was held in *Bunn* v. *People*, 45 Ill. 397, that the commissioners appointed under an act providing for the erection of a new state house were not officers.

Mr. Justice Garrison, now secretary of war, in *Fredericks* v. *Board of Health*, 82 N. J. Law, 200, 82 Atl. 528, distinguished between an office, a position, and an employment, in the following language:

"An office is a place in a government system, created or recognized by the law of the state, which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties.    *    *    *

"A position is analogous to an office, in that the duties that pertain to it are permanent and certain, but it differs from an office in that its duties may be nongovernmental, and not assigned to it by any public law of the state.    *    *    *

"An employment differs from both an office and a position in that its duties, which are nongovernmental, are neither certain nor permanent."

In a comparatively recent case, the Supreme Court of Massachusetts has observed:

"The holder of an office must have intrusted to him some portion of the sovereign authority of the state. His duties must not be merely clerical, or those only of an agent or servant, but must be performed in the execution or administration of the law, in the exercise of power and authority bestowed by law." (*Attorney-General* v. *Tillinghast*, 203 Mass. 539, 89 N. E. 1060, 17 Ann. Cas. 449.)

This court, in the case of *State* v. *Clark*, 21 Nev. 337, 31 Pac. 546, 18 L. R. A. 313, 37 Am. St. Rep. 517, had occasion to determine if a notary public was a civil officer, and it held that he was.   It uses this language:

"He [a notary public] is also recognized and called an officer in our statutes; is to be appointed for a definite term; is required to take the official oath; to give a bond the same as other officers; to keep a record of his official acts; and for his services may charge certain fees, which are regulated by law.   Clearly he is an officer.   *   *   * In fact, we do not understand it to be particularly contended that a notary is not a public officer, nor even that he is not a civil officer, but rather, notwithstanding he may be such, that it was not the intention of the makers of the constitution to include that office in the prohibition contained in this section.   This position is based, first, upon the proposition that the office of notary does not come within the mischief intended to be guarded against, and consequently should not be held to be within its terms.   In construing a constitution, the same as any other instrument, we are not always to be guided by the letter of the act.   We are to seek for the meaning that the words were intended to convey, and endeavor to carry out the intention of those adopting it.   But a fundamental principle in all construction is that, where the language used is plain and free from ambiguity, that must be our guide.   We are not permitted to construe that which requires no construction.   It is possible that when the convention adopted this section, they did not have the office of notary in mind, and that if they had, it would have been excluded; but, on the other hand, it is also possible that it would not have been excluded, for there is really as much reason for including this office as that of many other minor positions, which are admittedly covered by the section.   At any rate, it was within the power of the constitution makers, whether sufficient reason did or did not exist for their doing so, to include this office. The language they have used clearly does include it, and, under the circumstances, that is the end of the controversy.   We are not permitted to speculate further as to

what their real intentions were. (Cooley, Const. Lim. 69; End. Interp. St. sec. 6; *Sturges* v. *Crowninshield*, 4 Wheat. 204, 4 L. Ed. 529; *Gibbons* v. *Ogden*, 9 Wheat. 217, 6 L. Ed. 23.)"

Upon the oral argument, counsel for the respondent contended that it was the intention of the framers of the constitution to prevent a legislator from benefiting through employment afforded by virtue of any act passed while he was a member of the legislature, and therefore we should so construe the words "civil officer" as to embrace the position held by relator. The paragraph last quoted answers the contention.

In the more recent case of *Goldfield Con. M. Co.* v. *State*, 35 Nev. 178, 127 Pac. 77, this court had occasion to assert the same rule—that if the words of the statute embody a definite meaning, there is no room for construction. (*U. S.* v. *Graham*, 110 U. S. 219, 3 Sup. Ct. 582, 28 L. Ed. 126.)

"It is the duty of courts [in construing a statute] to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing." (*Eddy* v. *Morgan*, 216 Ill. 437, 75 N. E. 174.)

In view of the great caution exercised by the constitutional convention in the choice of its words, as shown by the debates, and in view of the ease with which it could have said "civil office of profit *or employment*," we are forced to the conclusion that the words "civil office of profit" were used advisedly, and that they must receive their ordinary construction.

After a careful consideration of the authorities, we are satisfied that not one element of an office enters into the position held by relator. None of the sovereign power of the state is intrusted to him. His compensation, period of employment, and the details of his duties, are all matters of contract with the board of directors. For, while the act says the board may "employ superintendents, directors, clerks, and other persons" for the purpose of carrying out the provisions of the act, "and for the further purpose of cooperating and advising with the exposition commissioner," it is apparent that the board had the authority

to contract as to what the specific duty of each employee should be, otherwise there would be a corps of advisers, and none to execute.

[3] This court, in the cases of *State, ex rel. Mighels,* v. *Eggers,* 36 Nev. 364, 136 Pac. 104, and *State, ex rel. Abel,* v. *Eggers,* 36 Nev. 372, 136 Pac. 100, 104, held that if the salary of an officer was not fixed by law, the state controller had a right to audit the claim, and, this being true, the petitioner had an action at law, and therefore the court was without jurisdiction to issue a *mandamus.* This rule was suggested to counsel by the court at the time of the oral argument, and, as we understand, counsel conceded the correctness of the rule and its application to this case, save that it is contended that the case is taken out of the rule because of the following language in section 6 of the act providing for the exhibit at the expositions, which reads:

"* * * And all disbursements from each of said appropriations shall be on certificates of the exposition commissioner, approved by a majority of the board of directors and by the state board of examiners, when the state controller shall draw his warrant and the state treasurer pay the same."

The question here involved was considered at length by this court in the case of *Lewis* v. *Doron,* 5 Nev. 399, and at a time so soon after the adoption of the constitution that the question should be held settled for all time. It was there held that the state controller is a constitutional officer, and that his duty to audit all claims against the state, except obligations fixed by law, is a constitutional one, and cannot be infringed upon by legislative enactment. For a thorough understanding of the case it is necessary that it be read at length; consequently we will not quote from it. See, also, *Love* v. *Baehr,* 47 Cal. 367.

We are satisfied that this court is without jurisdiction to entertain these proceedings, and that relator should be left to his legal remedy.

It is to be hoped that attorneys will not make applications to this court in the future in matters in which the court is without jurisdiction, as we will not consider them

further than to determine the jurisdictional question, unless it be in cases of great public concern.

It is ordered that the petition be dismissed, at the cost of relator.

NORCROSS, C. J., concurring:

I concur in the opinion and order. The principal question in the case is quite exhaustively considered in the opinion of the learned junior justice. While nothing need be added, a few additional observations may not be entirely surplusage.

The word "office" or "officer" is used in the constitution in more than twenty different sections, and in no instance where either of such words is used is there any context which would indicate a broader definition than that which legitimately belongs thereto. The word "office" is frequently so used in a statute that when the whole context of the statute is considered, a court is bound to give the word a broader meaning than its true definition imports. An illustration of this may be found in the case of *Vaughn* v. *English*, 8 Cal. 41, so much relied upon by counsel for respondent. The question before the court in that case was whether clerks in several of the state offices were officers within the meaning of section 6 of a certain act, entitled "An act to reduce and fix the salaries of officers and members of the legislature." The salaries of the several clerkships were specifically fixed by the act, and it was provided in section 6 that the act "shall not be held to reduce the salary or pay of any of the incumbents now in office, * * * but shall apply to every such officer hereafter elected or appointed."

The court was justified in construing the word "office" as used in that statute to include the clerkships, for the intent of the legislature was so clearly manifested. That case is very far, however, from being an authority holding that the word "office," as used in a provision of a constitution, in the absence of a context which would affect its proper signification, would have the same broad meaning. It could as well be argued that the legislature

of California did not consider members of the legislature as officers because the title of the act in question in the Vaughn case used the expression "officers and members of the legislature." In the opinion in the Vaughn case, which in its entirety is less than a page, is found this expression:

"The term 'officer,' in its common acceptation, is sufficiently comprehensive to include all persons in any public station or employment conferred by government."

This fugitive expression, unnecessary to a determination of the question involved, and unsupported by authority, if literally true, would make every employment in the public service an office. The man digging a sewer at day's wages would be an officer as much as the mayor of a city or a governor of a state. Against this view of the "common acceptation" of the term may be interposed the expression of the Supreme Court of the United States, speaking through Mr. Justice Brewer in *Louisville R. R. Co.* v. *Wilson,* 138 U. S. 501, 11 Sup. Ct. 405, 34 L. Ed. 1023:

"The terms 'officers' and 'employees' both alike refer to those in regular and continual service. Within the *ordinary acceptation* of the terms, one who is engaged to render services in a particular transaction is neither an officer nor an employee. They imply continuity of service, and exclude those employed for a special and single transaction."

All authorities recognize a distinction between the term "office" and "employment"; that although it may be said that every office is an employment, every employment is not an office. Clerkships have sometimes been classified as distinguishable both from officers and employees, as is the case of the federal statute considered in *Hand* v. *Cook,* 29 Nev. 518, 92 Pac. 3. As pointed out in the prevailing opinion, the Supreme Court of New Jersey makes three classifications—office, position, and employment—and defines and distinguishes each.

The word "office" or "officer" is used in the constitution of this state in more than twenty different sections, and in no instance where such words are used is there any

context which would indicate a broader definition than that which legitimately belongs to such words.

Notwithstanding the words "civil office of profit" appear in the section of the constitution without context or qualifying expression, affording justification for construction, we are urged to construe into the language something that is not there, and to hold that the convention in adopting, and the people in ratifying, the constitution, intended to adopt a policy which the language of the constitution fails to express. As said in 6 Ruling Case Law, 47:

" Courts are not at liberty to disregard the plain meaning of words of a constitution in order to search for some other conjectured intent."

This maxim of constitutional law was applied by this court in *State* v. *Clark*, 21 Nev. 333, 31 Pac. 545, 18 L. R. A. 313, 37 Am. St. Rep. 517, in construing the identical words involved here, found in the section of the constitution following the one in question. This court in the Clark case said:

"A fundamental principle in all construction is that where the language used is plain and free from ambiguity, that must be our guide. We are not permitted to construe that which requires no construction."

We can no more in this case say that what is in fact a mere employment is nevertheless within the meaning of "civil office of profit" than the court in the Clark case could say that the office of notary public was not within the meaning of such language. As "the language used is plain and free from ambiguity," as held in the Clark case, it comprehends every office of whatever character, and it follows, as a necessary sequence, that it likewise excludes every position or employment that does not possess the character of an office.

That the constitutional convention was not laboring under any misapprehension as to there not being a distinction between the meaning of the words "office" and "employment" is clearly manifest from another section of the same article 4, "Legislative Department." Section 28 of that article, in part, reads:

"No money shall be drawn from the state treasury as salary or compensation to any officer or employee of the legislature,   *   *   *   except in cases where such salary or compensation has been fixed by a law."

If the framers of the constitution had intended "employments" as well as "offices" to be within the meaning of section 8, art. 4, it was just as easy to have said so as it was in section 28.   They did not say so, and we would be violating a fundamental rule of constitutional interpretation to hold that they said what they did not say.   The judgment of the members of this court as to whether it is or is not good policy for the petitioner to hold the office in question is beside the case.

That many public positions in our scheme of government are not offices, as that term is used in the constitution, is also apparent when other constitutional provisions are considered.   By section 3, art. 15, it is provided:

"No person shall be eligible to any office, who is not a qualified elector under this constitution."

Notwithstanding this latter provision, most of the public money, that has been paid to the school-teachers of the state for the past half century has been paid to persons who were not at the time "qualified electors," hence such school-teachers could not have been regarded as officers within the meaning of the constitution, nor would it be seriously argued that the constitution contemplated that public-school teachers should be considered officers within the meaning of the constitution.   The position of a teacher in our public schools has, however, far more the elements of an office than that of a "superintendent" under the act of 1913 in question.

An examination of the statutes enacted by the various sessions of the legislature will disclose laws too numerous to mention, empowering various state officers to "employ" assistants who are paid salaries fixed by law, but who have never been regarded by any branch of government as officers within the purview of the constitution.   If every position created by the legislature could be regarded as an office, then every female clerk, stenographer, or attache of the legislative, executive, or judicial branch of

the government for the past fifty years has been serving in violation of the constitution, and all three departments of government have been conspicuous violators of the organic law.

It will not do to say that the word "office" means one thing in one section and another thing in another section, unless qualifying language appears in one section and not in the other. The rules of constitutional interpretation fortunately do not permit of individual speculation as to what ought to be.

That both the legislative and executive branches of the state government have manifested a clear understanding that a distinction existed between offices and employments is apparent in the legislation that has been enacted from the beginning of our government. With the one exception of the office of deputy state treasurer, every statute authorizing a deputy state officer uses the word "appoint," and in the case of the deputy state treasurer, where the words "employ a deputy" are used, it appears that the original act of 1865, "An act to authorize the state treasurer to employ a clerk" (Stats. 1864–65, c. 88), was subsequently amended by changing the word "clerk" to the word "deputy" (Stats. 1873, c. 15). While not conclusive, the fact that the legislature in creating positions has, in practically every instance, used the word "appoint" in cases where offices were clearly created and the word "employ" in other cases is at least persuasive that the legislature clearly recognized the distinction between an office and a position or employment.

As pointed out in the prevailing opinion, the statute of 1913, after creating the office of commissioner, makes it a "duty" of the board of directors "to employ superintendents, directors, clerks and other persons." The purpose of the act as indicated by its title is to provide for "exhibits of the products of the State of Nevada" at two expositions which are concluded during the year 1915. The position has no permanency, but is for a transient purpose only, nor does the statute specify a single duty to be performed other than to "cooperate and advise with the exposition

commissioner." Such a position carries with it no independent authority and partakes of none of the elements of an office. Petitioner is a mere agent of a superior authority with no defined duties, and is clearly the occupant of a position or employment, and not an office.

In *State* v. *Spaulding,* 102 Iowa, 639, 72 N. W. 288, in determining that "the treasurer of the commission of pharmacy" was not a "public office," after considering numerous cases, the court uses language applicable to the facts of the case at bar as follows:

"In the case at bar, the duties performed by the defendant do not indicate an office rather than an employment. He was, as we have shown, entirely dependent for his place upon the will or caprice of the commission. The duties imposed upon him were not the result of the law, but the will of his superiors, the commission. He was the creation of it, to do its will, having no independent functions. Duration or continuance is embraced in the term 'office,' and a position temporary in its character, and which may end at the will of a superior, is not ordinarily to be considered an office. (Mechem. Pub. Off. sec. 8.)   *   *   *   So a 'position the duties of which are undefined, and which can be changed at the will of the superior,   *   *   *   is not an office, but a mere employment, and the incumbent is not an officer, but a mere employee.'   (19 Am. & Eng. Ency. Law, pp. 387, 388, and cases cited.)"

While there is authority in support of the proposition that a mere legislative declaration that a position is created as an office makes it an office, whether it otherwise would so be regarded or not, it does not follow that if the legislature designated a position an employment which in fact had the attributes of an office, it would in law be regarded as merely an employment. Upon the contrary, any employment which invests the person with the exercise of governmental powers and duties, not merely transitory, which powers and duties may be exercised and performed by virtue of the statute and not as an

agent carrying out the directions of a superior authority, constitutes an office, no matter how it may be designated.

It is unquestionably the paramount duty of courts to enforce the will of the sovereign people, as expressed in the organic law, but in determining what is the sovereign will experience has crystallized certain inflexible rules which eliminate the personal equation of the individual judge, and which forbid the substitution of his personal views for the decree of a convention or people.

To say that the undefined position of "superintendent" under the act of 1913 is an office, or that, notwithstanding it is not an office, it is within the constitutional inhibition of section 8, article 4, would, in my judgment, be clearly erroneous in the first case and contrary to fundamental rules of constitutional interpretation in the second case.

MCCARRAN, J., dissenting:

I concur in the order dismissing the proceedings for want of jurisdiction. I dissent from that portion of the prevailing opinion which tends to hold that the relator does not come within the inhibition of section 8, art. 4, of the constitution of this state. The section of the constitution above referred to is as follows:

"No senator or member of assembly shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under this state which shall have been created, or the emoluments of which shall have been increased during such term, except such office as may be filled by elections by the people."

This constitutional provision did not originate with the framers of our organic law. It had been incorporated into the constitutions of many of the states of the Union admitted prior to 1864. It was then, and is now, to be found in the constitution of the State of New York, as well as in the constitution of the State of California—of which last-named state, thirty-eight out of the forty-six members composing our constitutional convention were former residents. It was from the organic acts of these two commonwealths that this, as well as many other of our

constitutional provisions, was adopted. We are justified
in assuming that the founders of our constitution, in
adopting this specific provision from the constitutions of
other states, did so not only in a spirit of approval of the
provision, but especially in the light of such applications
and constructions as had been given to it, or to the words
contained in it, by the courts of the states from whence
it was adopted. And where words or phrases, contained
in the adopted provisions, have received judicial interpre-
tation and definition by the parent state, the framers of
the constitution of the adopting state are presumed to
adopt and to intend to apply such definition or interpreta-
tion, where conditions make them applicable. When this
constitutional provision was adopted, it is reasonable to
suppose that it was adopted in the light of such expression,
coming either from lexicographers or from judicial declara-
tion, as indicated the force and effect of each term therein
used, as well as its scope and significance, in its usual and
ordinary acceptation by antecedent and contemporaneous
authorities.

The Supreme Court of the State of California, at whose
bar eleven members of our constitutional convention
were practicing attorneys, had construed the word
"office" in a decision rendered by Mr. Justice Terry,
speaking for the court, in 1857, some eight years prior to
the adoption of our constitution, and in that decision the
term "officer," in its common acceptation, was held to be
sufficiently comprehensive to include all persons in any
public situation or employment conferred by government.
The court, in that instance, quoted from an old English
lexicographer, as follows:

"Officers are public or private, and it is said every man
is a public officer who hath any duty concerning the
public, and he is not the less a public officer where his
authority is confined to narrow limits, because it is the
duty of his office and the nature of that duty which makes
him a public officer, and not the extent of his authority.
(Jacobs's Law Dict. vol. 4, p. 433.)" (*Vaughn* v. *English*,
8 Cal. 41.)

Burrill's Law Dictionary, a standard of authority at

the time at which this provision was incorporated into the organic law of the several states, holds that an office is:

"A position or station in which a person is employed to perform certain duties, or by virtue of which he becomes charged with the performance of certain duties, public or private."

As to what was the common acceptation of the term "office" prior to and at the time of the adoption of this provision of our constitution may be ascertained from the case of *People* v. *Hayes, et al.*, 7 How. Prac. (N. Y.) 248, in which the Supreme Court of New York approved the expression of Chancellor Sandford wherein he said:

" 'An office' * * * is a public charge or employment, and the term seems to comprehend every charge or employment, in which the public are interested. * * * Every office is considered public, the duties of which concern the public. (5 Bac. Ab. 180; 2 Tom. Dic. "Office"; *People* v. *Bedell*, 2 Hill, 199.)"

And in the same decision the court also approved of the expression:

"Every one who is appointed to discharge a public duty and receive compensation in whatever shape, whether from the crown or otherwise, is a public officer."

It makes little difference, in my judgment, as to what may be the varied interpretations and definitions that have been applied to the words or expression "civil office of profit" or the word "office" or "officer." We may ring the changes on these words as we wish, the policy sought to be established by the framers of our organic law, when they incorporated into that law section 8 of article 4, remains the same; the protection sought to be afforded remains the same; the inhibition sought to be established remains the same.

The words employed in section 8, article 4, of the constitution require no construction or interpretation. By the framers of the constitution, they were intended to carry and convey the general force and effect ordinarily given to them at that time. Read this section, and insert in place of the word "office" the definition

given to that word by the courts of New York and California in the Hayes and Vaughn cases, *supra,* and it follows that it was the intention of the framers of our constitution to prohibit a senator or member of the assembly from being appointed to any position or employment of profit in which, or by virtue of which, he would become charged with the performance of any public duties, where such position or employment was created during his term as a senator or member of the assembly or for one year thereafter.

In reviewing the innumerable expressions rendered by the various courts from times of antiquity until the present day, tending to define the words "office" and "officer," we may lose sight of the fundamental thing sought to be prohibited by the section of the constitution herein involved. We may dwell at length on the technical phases of the words "office" and "officer," but the more we attempt to become technical in this respect, the more we lose sight of that great, broad, wholesome policy, established by the framers of the organic law, by which incidents such as that presented in the case at bar were sought to be averted.

The seriousness with which the members of the constitutional convention regarded this provision may be gathered from the very brief but pointed discussion which took place at its adoption, and in this respect we find, on page 141 of Andrew J. Marsh's official report of the Debates and Proceedings on the Adoption of the Constitution of Nevada, the following:

. "Section 8 was read, as follows: 'Sec. 8. No senator or member of assembly shall, during the term for which he shall have been elected, nor for one year thereafter, be appointed to any civil office of profit under this state which shall have been created, or the emoluments of which shall have been increased during such term, except such office as may be filled by elections by the people.'

"Mr. Kennedy — I move to strike out the words, 'nor for one year thereafter.'

"Mr. Johnson—Now, Mr. Chairman, it must be apparent

to the members of this committee what is the object of
the incorporation of this provision. I think it is right as
it is, and I hope those words will not be stricken out. It
is to prevent the creation of offices which can be filled by
those persons who themselves created them. Sometimes
it may occur that a valuable and important office is pro-
posed to be created by the legislature, and a combination
can be made to secure the passage of the bill establishing
such an office by the efforts of the expected incumbent.
Under this provision, if the amendment be adopted, the
incumbency might be so arranged as to expire within a
short time, and then it would, of course, be necessary to
supply the office."

It was "to prevent the creation of offices which could
be filled by those persons who themselves created them"
that the framers of the constitution adopted section 8,
art. 4. They adopted this section in the identical language
in which it occurred in the then existing constitution of
the State of California; they adopted the words of this
section, with their meaning and significance embracing
such a scope as had been declared by judicial interpreta-
tion in the state from whence they were adopted, and
with which interpretation at least eleven members of
the convention, admitted practitioners at the bar of the
Supreme Court of California, must have been familiar;
and in this respect they had before them the case of
*Vaughn* v. *English, supra,* already referred to, a decision
which, by the way, has been referred to approvingly in
nearly every decision that has been rendered since that
time by the courts, in which the subject has been gone
into at length. They, therefore, adopted this provision
to prevent the creation by the legislature of public sit-
uations or employments which could be filled by those
persons who themselves created them.

In the case at bar, dwell as we will upon the varied
and various definitions to be given to the words "office"
or "officer," we have a most striking presentation of the
very thing which section 8, art. 4, of the constitution was
incorporated in the organic law to prevent: The peti-
tioner, a member of the legislature; the legislature of

which he is a member passes an act providing for the creation of certain positions, and imposing a tax upon the people of the state and their property for the payment of the salaries of those who might thereafter be appointed to those positions. After the close of the legislature by which the act was passed, petitioner, still a member of that body which passed the act, is appointed to one of the positions which, by his vote, he created. When established policies, broad principles, and manifest purposes confront us, aimed at prohibiting conduct and conditions such as these, should we quibble over far-fetched or fine-spun definitions of simple words, to the end that these policies, principles, and purposes may be lost sight of, warped, or destroyed?

If petitioner can be relieved of the inhibition of section 8, art. 4, then every one of the members of the legislature of 1913 is free from the operation of that constitutional provision—free to hold and receive the emoluments of positions which they created, if, by either chance, accident, or design, the position was not specifically termed "office."

If I grasp the significance of the prevailing and concurring opinions in this case, the only thing that will prevent a member of the legislature from occupying a position created by the session of which he is a member is that the position be by the act itself declared to be an "office."

However much we may feel ourselves bound by precedent established by other courts, however much the rule of *stare decisis* may be worthy of being followed, we should not be blinded by the labyrinth of technical definitions to such an extent as to lose sight of the aims and purposes and beneficial results sought to be brought about and accomplished by the policy established in the first instance by the organic law; and in the case at bar we should rather regard the seriousness of the protection sought to be secured to the people by the operation and enforcement of this constitutional inhibition. The words of a constitutional declaration such as this should not be narrowed down by finespun theories to a point where they exclude that which the framers intended to embrace.

There can be no construction where there is nothing to construe. Words should be given the scope and significance which they bore to the minds of those who incorporated them into the constitution. The intention of the framers of the law must be gathered from the words used, giving to them their contemporaneous acceptation. Where the framers of the constitution attempt, as in this instance, to establish a broad policy, forced or overstrict construction should not be resorted to, to the end that the wholesomeness of the policy to the body politic might be impaired or destroyed. The safer course, in my judgment, is to adopt that sense of the words employed or of the terms used that will insure, in the broadest scope, the fulfilment of the policy and aims sought to be established and accomplished.

In matters of this character, we may invade the realm of conjectural hypothesis and rob it of its most fairylike fancies. But, returning to the terra firma of things as they are, we are confronted with a rule set to govern human conduct, prescribed by a superior, and which an inferior is presumed to obey. We are confronted with the constitutional provision here involved, in the face of which we are asked the question: Can the members of the legislature create positions, tax the property of the state to pay the salaries, and then occupy the positions and draw the salaries themselves? This is the question presented by the case.

If precedent were essential to lead the way in this case, it is only necessary to cite a few of the many cases that might be cited to support the opposite position from that taken by my learned associates. (*People, ex rel.,* v. *Nostrand,* 46 N. Y. 375; *Shelby* v. *Alcorn,* 36 Miss. 289, 72 Am. Dec. 169; *Rankin* v. *Jauman,* 4 Idaho, 53, 36 Pac. 502; *McCornick* v. *Thatcher,* 8 Utah, 301, 30 Pac. 1091, 17 L. R. A. 243; *People* v. *Hayes,* 7 How. Prac. 248; *Patton* v. *Board of Health,* 127 Cal. 398, 59 Pac. 702, 78 Am. St. Rep. 66; *Clark, et al.,* v. *Stanley, et al.,* 66 N. C. 63, 8 Am. Rep. 488; *People, ex rel. Throop,* v. *Langdon,* 40 Mich. 673; *Michael* v. *State,* 163 Ala. 425, 50 South. 930; *U. S.* v. *Hartwell,* 6 Wall. 385, 18 L. Ed. 830; Enc. U. S.

Sup. Ct. 956; *Vaughn* v. *English,* 8 Cal. 41; *Schmitt* v. *Dooling,* 145 Ky. 240, 140 S. W. 197, 36 L. R. A. n. s. 881, Ann. Cas. 1913B, 1078; *U. S.* v. *Germaine,* 99 U. S. 508, 25 L. Ed. 482; *Talbot* v. *U. S.,* 10 Ct. Cl. 426; *Louisville* v. *Wilson,* 99 Ky. 598, 36 S. W. 944; *State* v. *May,* 106 Mo. 488, 17 S. W. 660; *Collins* v. *N. Y.,* 3 Hun, 680.)

Aside from the expression set forth in these and numerous other decisions, wherein thought and consideration of the courts generally have been expressed by judicial utterances—aside from all this, the question is, in my judgment, not one of extreme intricacy, but is one of easy answer and solution. We have a policy and a purpose and an inhibitory declaration, created by an organic law, not narrow but broad, not rigid but flexible, not harsh but wholesome. No "kindly light" by way of judicial expression is required to lead the way, for there is, in fact, no "encircling gloom." The words used in the section are so plain and self-explanatory, the policy established is so manifest, and the result is so wholesome, that these features in themselves light the way to comprehension and application.

The highest duty of the courts is to be an affirmative force in putting into execution the properly expressed will of the people, and to this end it is the ever-attendant duty of the courts to see to it that a properly declared rule, prescribed by a constitutional or legislative body, is not deprived of its lifeblood by some strained construction, to such an extent as to destroy its power of effective operation.

Pages might be written in an analytical discussion in furtherance of my views, briefly set forth herein. But, as the accomplishment of a dissenting opinion is usually *nil,* it will suffice to say that, in my judgment, the petitioner in this case holds a position which by constitutional provision he is prohibited from occupying and from which by constitutional provision he is prohibited from receiving the emoluments, and the petition, therefore, should be denied, not only for want of jurisdiction, but by reason of the constitutional inhibition as well.